People of the State of Illinois, Defendant in Error, v. Harry E. Meisenhelter, Alias Harry E. Mersenhelter, et al., Plaintiffs in Error.

Gen. No. 9,337.

512

514

Opinion
filed February 24, 1943.

KARNS & BANDY, of East St. Louis, for certain plaintiffs in error.

JOHN R. FITZGERALD, of Decatur, for certain other plaintiff in error.

JOHN R. KANE, of Harrisburg, for certain other plaintiffs in error.

IVAN J. HUTCHENS, State's Attorney, for defendant in error.

MR. JUSTICE HAYES delivered the opinion of the court.

Plaintiffs in error (hereinafter called the defendants) were indicted by a grand jury at the May term 1941 of the circuit court of Macon county on the charge of conspiracy to injure and destroy, by dynamite, a certain pipe line, the property of The Texas Empire Pipe Line Company. The defendant in error will hereinafter be referred to as the State.

The jury returned a verdict of guilty as to each of the defendants herein and fixed the punishment at imprisonment in the penitentiary and also a fine. Motions for a new trial and an arrested judgment were denied. Judgment was entered on the verdict and the defendants were sentenced to the penitentiary. They prosecuted this writ of error to reverse that judgment.

Defendant Harry E. Meisenhelter was business agent for the Common Laborers' Union at Decatur.

Defendant Edwin Roy was treasurer of the union and a member of the executive board. Defendants Cecil Wilson and Melvin Watkins were also members of the board. Defendant S. C. Lorton was business agent for the Boiler Maker's Union. He lived in East St. Louis, but his jurisdiction included central Illinois. Defendant George Diehl was a member of the East St. Louis local of the Boiler Maker's Union. Defendant George Bruns was a bartender in Granite City.

, Roy, Wilson and Watkins base their motion to quash the indictment on account of each of them having been subpoenaed to testify before the grand jury. It appears from the record that each defendant signed a waiver of immunity before appearing before the grand jury; that Meisenhelter had consulted with a lawyer in behalf of all of them sometime before they appeared before the grand jury and conveyed the lawyer's advice to them, and that several weeks before the convening of the grand jury they had been questioned by federal investigators and had signed written statements. In view of this they were not in a position to claim they were taken by surprise, deceived or not properly advised as to their constitutional rights. The constitutional privilege of silence on the part of a witness, when a reply would tend to expose him to punishment, is a personal privilege of the witness. If he answers, without claiming it, the privilege is waived. The law presumes that a party who is called upon to testify as a witness knows his rights. He may decline to testify to anything that may tend to incriminate him. If he fails to claim the privilege, he cannot afterwards complain. *People v. Nachowicz*, 340 Ill. 480. The court is not required to inquire into proceedings of the grand jury to determine whether the evidence adduced there was sufficient to warrant the indictment, unless all the witnesses were incompetent or all the testimony on which the indictment was found was incompetent. *People v. Gould*, 345 Ill. 288. In this case

there was no showing made as to what the defendants testified to before the grand jury. It appears there were a large number of other witnesses, whose names appeared on the indictment and under this set of circumstances the presumption is that the indictment was based on competent evidence. *People v. Gould, supra.* The motion to quash was properly overruled.

Meisenhelter, Roy, Wilson and Watkins filed a motion for severance. Lorton, Diehl and Bruns (the other defendants) did not ask for a separate trial before the trial started, but during the trial made a motion to withdraw a juror so they could ask for severance. Both motions were denied by the court. The only ground set out in the application for severance by the first-named defendants were that statements had been signed by some defendants which might be competent against the declarant but incompetent as to the other defendants.

The Supreme Court held in *People v. Siegal*, 362 Ill. 389 that, ''Where two or more persons have been indicted jointly and one of them has made a confession, a severance will not be permitted as a matter of right, nor will the Court be influenced because some of the defendants may prefer to be tried separately from the others. The People's rights in criminal prosecutions are to be observed as much as the defendants' rights. Both parties are clothed with certain privileges and presumptions and they must be duly regarded. It would be unjust and unreasonable to universally permit separate trials of persons who are jointly charged with a crime, and the better practice is not to permit it unless it shall appear from a showing made to the Court that a denial of a severance would work prejudice to some one or more of the parties.'' The general rule is that persons jointly indicted shall be jointly tried, and it is only in those cases where one or more defendants would be deprived of a fair trial that the court is warranted in granting

the severance. It is incumbent upon a defendant moving for a separate trial to show the trial judge how he would be prejudiced by a joint trial. If he fails so to do he cannot, on review, complain of the action of the trial court in denying his objection. The determination of this question is governed by the facts in each case and the motion is addressed to the sound discretion of the trial judge. *People v. Minnecci,* 362 Ill. 541. A court of review will only consider such evidence as is before the trial court at the time of the hearing of the motion for severance. *People v. Gould,* 345 Ill. 288.

There was no showing made on the application for severance that the defense of the different defendants were antagonistic. Under the particular circumstances of this case, it appears that all the defendants were engaged in a joint enterprise and working towards a common end. In our judgment, the trial court properly exercised his discretion in refusing the severance.

The pipe line in question was constructed in the summer of 1939 and finished shortly after the first of the year in 1940, running from Salem, Illinois to its pumping station at Hayworth, Illinois. The work was done by the Williams Brothers Construction Company, as contractors, on an open-shop basis. The defendants in error with other union representatives of the various crafts endeavored before and during the time of the construction to have the work all done by union labor on a closed-shop basis.

Early on the morning of February 9, 1940, the pipe line was bombed at a point near Boody in Macon county. Pearle Hoskinson, who was secretary and a member of the executive board of the Decatur local of Laborers' Union, and who was indicted with the above-named defendants, pled guilty prior to the trial, and testified in behalf of the State. At the time of the trial he had a petition pending for probation. His testimony connected the defendants with the crime,

was very damaging to them, and in substance was as follows: In the summer of 1939 at an executive board meeting consisting of Meisenhelter, Roy, Wilson, Watkins and Hoskinson, Meisenhelter reported the pipe line was coming through, and the job would have to go union; that there would have to be something done about it and recommended the establishing of a slush fund, and suggested getting the money without the members knowing about it; that the board decided to take the money out of initiations, dues and reinstatements and turn it over to Roy who was to keep it in cash without its going through the banks or any record showing it; that Louise Schoof, bookkeeper and stenographer for the union, shortly thereafter collected something over one hundred dollars and turned it over to Roy; that the board held weekly meetings and Meisenhelter reported that the pipe line was getting closer, and that they would have to do something about, it, as Buck Lorton was putting pressure on him to have something done; that on the first Sunday of February, 1940 the witness was present at a meeting held in Meisenhelter's house when Lorton, Diehl and Bruns came into the meeting; that Diehl gave his name as Jones and Bruns as Brown; that Lorton told Meisenhelter not to call him over the telephone any more; that Meisenhelter told all three of them he had a pipe line he wanted blown up in Macon county and wanted to know what it would cost; that Lorton replied five hundred dollars and inquired of Meisenhelter if he wanted to furnish the dynamite or have them furnish it; that Lorton advised him it was better to steal the dynamite so it could not be traced; that Lorton told Meisenhelter to have the money ready the first part of the week; that Bruns and Diehl would do the job and that he had picked out the spot; that Lorton said the bombing would take place in the next few days and they would have to have the money ready. The witness further testified to being present

when Meisenhelter asked other labor organizations to kick into the "slush fund" and stated to them that arrangements for blowing up the line had been made with men from St. Louis; that he was present at a conversation between Louise Schoof and Meisenhelter when Meisenhelter reported that those fellows came back that morning at about two or three o'clock in a LaSalle car and wanted to know if they could use his garage to make the bomb; that he let them go down in his basement and that they strung fuse over the place and made the bomb and then left; that he gave them three hundred and seventy-five dollars, and that Meisenhelter then stated, "I suppose it is blown up"; that that was on Friday morning between nine and ten o'clock of the day that the bombing took place. Meisenhelter told the witness and Roy not to talk to any one about it.

The defendants herein contend that their conviction is based solely on the testimony of Hoskinson, an accomplice and an ex-convict, who at the time of his testimony was under duress on account of having entered his plea of guilt; that he had a petition pending for probation and was actuated by the motive of pleasing the State so as to obtain leniency for himself; but the written statements of Roy, Watkins, Wilson, Foxx and Chvatal which were admitted in evidence, corroborates the testimony of Hoskinson. None of the defendants testified nor did they offer any defense, other than some character witnesses.

The testimony of an accomplice is subject to great suspicion, and should be acted upon with great caution. *People v. Lawson*, 345 Ill. 428, but a verdict of guilt may be sustained on the uncorroborated testimony of an accomplice. *People v. Spira*, 264 Ill. 243. A conviction procured on the testimony of an accomplice will not be molested where the facts and circumstances testified to by such an accomplice when weighed and tested, according to the established

rules applicable thereto are sufficient to prove guilt beyond a reasonable doubt. *People v. Karatz,* 365 Ill. 255. Our Supreme Court has frequently held that the testimony of one witness even though denied by the accused may be sufficient to sustain a conviction. *People v. Angelica,* 358 Ill. 621.

Under the law the fear and mistrust that go with the testimony of an accomplice is only as to the credibility of the witness of which the jury is the sole judge. The testimony of Hoskinson taken with the facts and circumstances shown in the record; the many meetings of the defendants, their common interest, their joint enterprise, their motive, together with the statements taken from the several defendants when separated from each other, make a record that it would be hard to see how the jury could return any other verdict than was returned in this case.

Defendants complain of rulings of the trial court on the admission of evidence, and point out that Hoskinson was permitted to testify to a statement made by Meisenhelter at a board meeting of the Laborers' Union in which he, Meisenhelter, Foxx, Watkins and Wilson were present; that Meisenhelter said the other unions were talking to him about the pipe line, saying he should make them go union; that they were putting pressure on him down around St. Louis for not doing something about it; that when Meisenhelter was asked who was putting pressure on, he replied Buck Lorton. Objection was made to this testimony by the defendant Lorton, after which the prosecutor stated to the court, "we will connect it up later." The court then stated: "Well if you do all right on that promise, I will let it stand." Defendant Lorton points out that Meisenhelter's statement was made outside of his presence and was therefore incompetent. Other testimony of this witness is objected to as not being made during the existence of the conspiracy. Where the proof of conspiracy depends upon a large amount of

circumstantial evidence and isolated, independent acts, and where the whole of the evidence introduced on the trial taken together shows such a conspiracy actually exists, it will be considered immaterial whether the conspiracy was established before or after the introduction of such acts and declarations. The prosecutor may either prove the conspiracy which rendered the acts of the conspirator admissible in evidence, or he may prove the acts of the different persons and thus prove a conspiracy. Where a conspiracy is established, every act or declaration of any of the conspirators in furtherance of the common purpose is regarded as an act binding all. *People v. Nusbaum,* 326 Ill. 518; *People v. Looney,* 324 Ill. 375. The existence of a conspiracy may be proved not only by direct evidence but also by inference from the conduct, statements, documents, facts and circumstances which disclose a common design on the part of the accused persons and others to act together in pursuance of a common, criminal purpose. *People v. Link,* 365 Ill. 266. Statements made by Meisenhelter, although all the defendants were not present at the time, appear to be made for the purpose of bringing about the dynamiting of the pipe line in question and were binding against Meisenhelter's coconspirators. *Spies v. People,* 122 Ill. 1.

Further assignment of error is made that the court permitted Hoskinson to testify that Meisenhelter stated in 1939 that someone "blowed up the pipe line south of Vandalia." Objection was made on the grounds that it was immaterial, and a separate crime.

The question of the state of mind, motive and intent of the several defendants was a fact which the jury was entitled to have as a bearing upon the ultimate fact charged, and for the purpose of assisting the jury in coming to a conclusion as to the ultimate fact. It appeared that Meisenhelter was following the Vandalia job as a pattern and the court properly admitted the evidence to enlighten the jury on the motive and intent

of Meisenhelter. Evidence tending to show the re-lation of the parties, the purpose of the combination and the preliminary steps taken to effect that purpose is within the scope of the investigation to establish the conspiracy. *People v. Drury,* 250 Ill. App. 547; *People v. Nall,* 242 Ill. 284.

Error is assigned by the defendants on the trial court's ruling in admitting the written statements of defendants Roy, Wilson, Watkins, Chvatal and Foxx. The court limited the admission to the particular defendant making the statement and deleted the names of any other defendant appearing in the statement, substituting the words ''other person or persons.'' This is the usual and approved procedure. *People v. Siegal,* 362 Ill. 389; *People v. Young,* 316 Ill. 508.

The defendants in their briefs, complain bitterly of the attitude of the trial court and contend that because of this they were denied a fair trial. It appears that the record is voluminous. The case was bitterly contested. There were a number of lawyers on the defense who appeared to be experienced, forceful men, representing numerous defendants. On this account there was some confusion at times during the trial. We have examined the abstract and additional abstract as well as referred to the record on the points raised under this subdivision, and we find from this inspection that the trial judge exercised considerable patience and caution in the conduct of the trial,—particularly in ruling on the evidence. Defendants' counsel are unduly sensitive in regard to the court's remarks. They complained many times on the court asking for authorities when they took issue with him on his ruling. This is not unusual for it is the duty of counsel to furnish authorities in support of the position taken. One of these instances was where Hoskinson testified that Meisenhelter said to him, ''They have not got anything on us, if we just sit tight. They cannot get us, if we just sit tight.'' De-

fendants' counsel objected on the grounds that it was immaterial. The court in ruling said, "I think it is material, have you any authority? I think it is Mr. Kane." A number of similar instances are pointed out here by the defendants but we fail to find that the record substantiates the severe criticism made on the trial court.

After the motion for a new trial had been filed together with the points relied on, the court showed some impatience at the time he passed on this motion, but this did not add to or take from the record as made, other than affect counsel's feelings.

We find nothing in the conduct of the court that would cause reversible error. A trial judge has the burden of giving both sides a fair trial and seeing to it that the law prevails, and that justice is done. On this record we find the trial judge clearly carried the responsibility.

Criminal acts of violence as disclosed by the record in this case under the pretense of labor are wholly inexcusable and very detrimental to labor, as it causes labor to appear in ill repute in the eyes of the public. It is apparent from the record in this case that the body of the membership of this local would not countenance the unlawful act that was perpetrated by their agents, for the latter were afraid to let the members as a whole know anything about it. It is unfortunate for labor organizations to permit their affairs to fall into the hands of unscrupulous men who will commit criminal acts of violence as a matter of expediency when it is wholly unnecessary, un-American and only injures the cause of labor. Organized labor has made very great strides during the last decade. They have done so under the law and with the help and protection of the law in the American way.

In entering judgment the court fixed the minimum and maximum sentence as to each of the defendants under the Act of 1941. The defendants contend that

this act violates section 13, article 4 of the constitution, which was so held by our Supreme Court in the case of the *People v. Montana,* 380 Ill. 596. On account of this error the present case will have to be reversed and remanded to the circuit court with directions to enter proper sentence under the Indeterminate Sentence Act, otherwise we are of the opinion that the defendants had a fair trial and were legally convicted.

The judgment is reversed and cause remanded to the circuit court with directions to enter proper sentences.

*Reversed and remanded with directions.*