**People of the State of Illinois, Plaintiff-Appellee, v. Ernest Ramey, Defendant-Appellant.**

**Gen. No. 52,844.**

First District, Fourth Division.

October 15, 1969.

Gerald W. Getty, Public Defender of Cook County, of
Chicago (Theodore A. Gottfried, Norman W. Fishman,

432

and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, James Haddad, and Martin Friedman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

Ernest Ramey, and a codefendant, James Carter, were charged with armed robbery, attempted rape and aggravated battery. After a jury trial, both were convicted. Post-trial motions were made and overruled. They were sentenced to serve concurrent penitentiary terms of twenty to forty years for the armed robbery, five to ten years for the attempted rape, and eight to ten years for the aggravated battery.

Only Ramey prosecutes this appeal.* He contends that (1) the trial court erroneously denied his motion to suppress and admitted illegally seized evidence; (2) he was deprived of a fair trial when the court denied his motions for a mistrial and for severance; and (3) the twenty-year minimum sentence given him for the offense of armed robbery was excessive and should be reduced.

The evidence discloses that on March 11, 1967, Mrs. Florence Malone and her daughter Rita were in their home in the City of Chicago. With them was another daughter, Mrs. Marie DiVito. At about 6:15 p. m., a man dressed in a police uniform came to the door and inquired about a hit and run accident. After receiving answers, the man left.

---

* In this opinion Ernest Ramey will be referred to as the defendant. James Carter, who was a codefendant, but who does not join in this appeal, will be referred to by name.

During the evening of March 14, while Mrs. Malone and Rita were watching television, the doorbell rang. It was the same man. This time he said he saw the sign announcing the house was for sale. He wanted the interior shown to him. Rita Malone complied; and as she was showing some of the rooms, the doorbell rang again. The man said that it was his brother who was also interested in the house. The second man was let in. A short time later, one drew a gun and announced it was a "stick-up." Both women were beaten; and the second man tore off Miss Malone's clothes in an attempt to rape her. The house was ransacked. The two men left taking some money, pieces of costume jewelry, a Zenith 25-inch color television set, and a Grundig-Majestic stereo record player. Neighbors came; and the police were called. The two women were taken to a hospital where they remained in an intensive care ward for three and a half weeks.

The next day two detectives interviewed them. As a result of investigation, a photograph of the defendant was obtained and shown to the women on March 19. On seeing the photograph, both positively identified defendant as the man who was in their home on March 11 and who returned on March 14. As a result of this identification, defendant was arrested. In his room were found a uniform which resembled that of a police officer, a hat, a nylon jacket, a pair of trousers with white stripes, a name plate, star, revolver, holster, handcuffs, and two pieces of white costume jewelry in the pocket of the jacket. The costume jewelry was later identified as that taken from the Malone home on March 14.

From defendant, the police learned the name and address of James Carter. They went to the Carter home; and in a living room found the Zenith 25-inch color television set and the Grundig-Majestic stereo record player taken from the Malone residence. James Carter was arrested a short time later, not far from his home.

Carter was represented by private counsel; and defendant by the Public Defender of Cook County. On the day the case was called, Carter moved to suppress the evidence taken from his home: the television set and the stereo record player. At the hearing on the motion, the prosecuting attorney said that the State intended to use as evidence the uniform, gun, and the costume jewelry taken from defendant when he was arrested. His counsel asked permission to join in the motion to suppress, saying he based his request on the representation concerning the evidence taken from defendant. This permission was granted on the statement of counsel that a written motion would be filed. No written motion was ever filed. No statement was made to the court by defendant, or by his counsel, that he was joining in the motion in order to suppress evidence taken from Carter's home.

Six witnesses testified at the hearing on the motion. They were Gloria Carter, Catherine Carter, Robert Cozzi, Daniel Centracchio, Irene Ramey, and the defendant. When Gloria and Catherine Carter testified concerning the presence of officers in their home, direct examination was conducted by Carter's attorney. Defendant's counsel did not cross-examine them. When Irene Ramey and the defendant testified, his counsel conducted the direct examination. Carter's counsel did not cross-examine them. When Officers Robert Cozzi and Daniel Centracchio testified, Carter's counsel conducted the examination concerning the search of Carter's home; and defendant's counsel conducted the examination concerning the search of the Ramey home. When the motion to suppress was summarized and argued at the conclusion of all the evidence, only Carter's attorney argued. He centered on the search of Carter's home. Defendant's counsel made no argument. When the trial judge made his ruling, he first commented on the search of defendant's home and overruled his motion. He then commented on the search of

Carter's home and overruled his motion. At no time did defendant claim he was seeking suppression of evidence taken from Carter's home.

In the trial that followed, the items taken from both homes were admitted in evidence. After the State rested its case, Gloria Carter, sister of James, was called as a witness. She testified that three or four days before police officers came to her home, her brother and the defendant brought in the television set and stereo recorder. Counsel for defendant moved for a mistrial claiming he did not know Carter was going to interpose a defense implicating defendant. The court heard arguments and overruled the motion.

James Carter then testified that on the Thursday before he was arrested, defendant and two of his friends sold him the television set and the stereo recorder for $300. Defendant's counsel renewed the motion for mistrial. The court denied it. Defendant's counsel did not cross-examine Gloria Carter or James Carter. No evidence was offered to contradict their testimony. After receiving instructions, the jury returned its verdicts against both defendants.

■ Defendant's first contention is that the trial court erred in denying the motion to suppress and admitting in evidence the Zenith 25-inch color television set and the Grundig-Majestic stereo recorder taken from the home of James Carter. Argument supporting this contention assumes that defendant moved to suppress the evidence taken from the Carter home. Our reading of the record, however, compels us to conclude that the claim defendant makes in this court was not made below. Therefore, the contention and the argument are refuted by the established principle that we will not consider questions concerning a search and seizure unless they are raised in the trial court. People v. Green, 36 Ill2d 349, 223 NE2d 101; People v. Harris, 33 Ill2d 389, 211 NE2d 693; People

v. Beoh, 78 Ill App2d 98, 223 NE2d 424; People v. Miller, 76 Ill App2d 261, 222 NE2d 153.

Defendant's second contention is that he was deprived of a fair trial when the court denied his motions for mistrial and for severance. The motions were informal, made after the jury was sworn, and while it heard the defense, the State having already put in its case. They were made because defendant's counsel thought the testimony of Gloria Carter and James Carter was injurious to the defendant.

 It is settled in our criminal jurisprudence that jointly indicted defendants are ordinarily tried together. Whether the trial of jointly indicted defendants shall be separate is left to sound judicial discretion. People v. Ross (Pawlak), 41 Ill2d 445, 244 NE2d 608; People v. Barbaro, 395 Ill 264, 69 NE2d 692. A motion that has as its purpose the separation of defendants for trial must be made before the jury is sworn. People v. Fox, 319 Ill 606, 150 NE 347; People v. Anderson, 239 Ill 168, 87 NE 917. It is incumbent on a defendant moving for a separate trial to show how he will be prejudiced by a joint trial; and, if he fails to make the showing required, he may not, on review, complain of the denial of his objections to a joint trial. People v. Meisenhelter, 317 Ill App 511, 47 NE2d 108. The paramount inquiry or test is, are the defenses of such an antagonistic nature that a severance is imperative to insure a fair trial. People v. Grilec, 2 Ill2d 538, 119 NE2d 232. It is our judgment that when tested by these standards, the trial court did not abuse its discretion nor deprive defendant of any fundamental right by denying the informal motions for a mistrial and for severance made after the jury was sworn and while the case was being heard.

Defendant's third contention is that the twenty-year minimum sentence given him by the court for the offense of armed robbery is excessive and should be reduced. He

argues that this court's power (Ill Rev Stats (1967), c 110A, § 615) to reduce the punishment imposed by the trial court should be exercised, and a shorter sentence imposed that will aid his rehabilitation.

■ The power to reduce the punishment imposed by a trial court should be exercised with caution and circumspection. People v. Caldwell, 39 Ill2d 346, 236 NE2d 706; People v. Brown, 107 Ill App2d 406, 246 NE2d 61. The primary purpose of this power is to prevent arbitrary or oppressive treatment of offenders and to provide penalties which are both proportionate to the circumstances of the case, and which recognize differences in rehabilitation potential of offenders. People v. Drewniak, 105 Ill App2d 37, 245 NE2d 102. When a sentence is imposed within the limits prescribed by statute, it will not be disturbed on review unless it clearly appears the punishment is a departure from fundamental law, its spirit and purpose; or, that the punishment is manifestly in excess of the provisions of Section 11 of Article II of the Illinois Constitution requiring that all penalties be proportioned to the nature of the offense. People v. Juve, 106 Ill App2d 421, 245 NE2d 293.

■ Defendant was convicted by the jury of three serious offenses. Few crimes are as heinous as the invasion of a home and the infliction of terror on two defenseless women. The punishment imposed is consistent with sound judicial discretion.

The judgment is affirmed.

Judgment affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.