THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY ARBOGAST, Defendant-Appellant.

Second District (1st Division)   No. 75-422

Opinion filed August 23, 1976.

Louis P. Walter, Jr., of Ohio, for appellant.

Peter J. Woods, State's Attorney, of Oregon (Edward N. Morris, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Following a jury trial the defendant was convicted of delivering less than 30 grams of a controlled substance, MDA (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(b)). He was sentenced to 3 years' probation with the first 360 days to be served as periodic imprisonment, and fined $3500. He appeals, contending that the record raises the defense of entrapment and that the State has not proved him guilty beyond a reasonable doubt in view of that defense. He also complains that various evidentiary rulings together with the remarks of counsel deprived him of a fair trial.

The State's witnesses established that Steve Benney, an undercover deputy, was supplied $35 to buy drugs. On the evening of April 30, 1974, Benney and James Hoover entered the Tradewinds Tavern in Oregon, Illinois, after first being searched by the police. Benney, Hoover, one Jeff Hardesty and the defendant exited from the rear door of the tavern and went upstairs leading to a second-floor apartment. After approximately one-half hour they came down and re-entered the tavern. A few minutes later Hardesty left, then returned in a short time. Shortly thereafter Benney exited the tavern and turned over a parcel to the officers who were conducting the surveillance. The parcel contained a small plastic bag with white powder which was found to contain MDA. Benney also returned the balance of the money he had been given to make the purchase.

Hoover who was a part-time bartender at the tavern and friendly with the defendant, testified that he had asked defendant in the tavern where they could get some "speed" and that defendant had answered, "Let's go upstairs and talk about it, I don't want to talk about it down here." They were standing in the kitchen of the upstairs apartment when Arbogast left the room and shortly came back with the bag with the white substance in it and said he wanted $20. However, when Benney said he was more interested in "speed" but would give $15 for the package, defendant agreed and delivered the bag. Hoover said he bought one of two bags of marijuana offered to him by Hardesty. He testified that either defendant or Hardesty, he was not sure which, said that they were expecting "1000 hits" of speed to come in and that Benney said he would be interested. On cross-examination the witness testified that he had once been arrested for sale of cannabis but that the charge had been dismissed. However, he said the dismissal was not in consideration for his testimony in this case.

The testimony of Benney essentially corroborated that of Hoover. Benney testified, however, that Hardesty and Arbogast were talking together about the expected shipment of "1000 hits" of "speed." Benney also testified that defendant told him they were expecting 100 pounds of marijuana at a later date.

The defense produced the testimony of Hardesty who said that he came upstairs looking for defendant and saw Benney standing in the kitchen and Hoover and Arbogast in the bedroom. He went in the bedroom and saw Jim Hoover hand the defendant Arbogast the small pouch which appeared to be the same pouch which was identified in court. Defendant, Hoover and himself went back out into the kitchen where Benney had remained. There Benney proceeded to talk about drugs saying that his wife was a "speed freak" who needed some pills "pretty bad" and he would appreciate anything that could help him out. On cross-examination the witness stated that defendant took out a bag and placed it on the table but that defendant did not say that the bag contained MDA or that he wanted $20 for it. He also testified that there was no conversation about "speed." In his opinion defendant was drunk at the time of the alleged transaction.

Defendant testified that Benney told him his wife needed speed badly and wanted to know whether he could find any for him; that Hoover handed defendant a package of white powder and told him to deliver it to Benney and that he did not know what was in the bag. He wasn't sure if he had asked Benney for money or had received it because he was drinking heavily.

■■ Defendant first contends that his motion for a directed verdict at the close of all the evidence was improperly denied for the failure of the State to introduce sufficient evidence to sustain its burden of showing that

he was not entrapped in view of the evidence of entrapment. We disagree. It appears from the record that defendant sought to defend in the trial of the case on his alleged lack of guilty knowledge and not on the ground of entrapment.

Moreover, the evidence does not support a defense of entrapment. The State's witnesses clearly established a controlled purchase of drugs from the defendant who was motivated to sell. The mere fact that a government agent affords the defendant an opportunity to commit a crime or aids and encourages a defendant in committing it does not establish the entrapment defense. (See *People v. Gonzales*, 125 Ill. App. 2d 225, 232 (1970).) The jurors were not required to accept and apparently did not accept the testimony of the defendant which they could find to be incredible under all of the circumstances. But even under defendant's version that Hoover, the government informer, supplied the controlled substance which defendant delivered, he has not established the defense of entrapment. See *Hampton v. United States*, ___ U.S. ___, 48 L. Ed. 2d 113, 96 S. Ct. 1646, 1648-50 (1976).

■■ Defendant next argues that the controlled substance should have been excluded on his motion. He claims that there was a failure of proof of a proper chain of possession. Defendant, however, does not document this contention except to argue generally that there was a possibility of tampering. From our review of the record we find a continuous chain of possession with no suggestion of tampering. The evidence was therefore properly admitted. See *People v. Kristovich*, 32 Ill. App. 3d 979, 985 (1975).

■■ We also find defendant's contention that there is a fatal variance between the pleadings and proof based on conflicting testimony as to the address of the apartment where the offense was alleged to have occurred to be entirely without merit. While the State in its answer to defendant's discovery motion gave the address as 100 N. Fourth Street, Oregon, it was also referred to as a second-floor rear apartment belonging to Terry Arbogast. The fact that there was some testimony at trial that the address might have been 104 or 108 N. Fourth Street did not create a fatal variance in the view of the clear testimony that the offense occurred in the second-floor apartment occupied by the defendant and located above the Tradewinds Tavern.

Defendant next claims that the court committed reversible error in permitting Hoover and Benney to testify over objection that Hardesty delivered two small bags of marijuana to Benney in Arbogast's apartment at approximately the same time Arbogast was delivering the MDA to Benney; and to allow Benney to testify that shortly thereafter in the Tradewinds Tavern, Hardesty delivered pills containing "speed" to Benney.

■■ The testimony as to Hardesty's delivery of contraband substances was not directly related to the conduct of the defendant. It did not suggest that the commission of the separate offense by Hardesty showed this defendant's propensity to commit this offense. All three deliveries of drugs occurred in the same evening during a very short period of time, involving the same persons, and with inseparable discussions relative to offers to sell various drugs. The suggestion that a person other than the defendant committed a separate criminal offense was a by-product of the relevant evidence offered by the State and did not constitute error. See *People v. Peto*, 38 Ill. 2d 45, 51 (1967).

■■ Defendant's further argument that the court erred in denying the defendant a preliminary hearing is also without merit. It appears that defendant was arraigned on July 22, 1974, on the basis of a criminal complaint charging the unlawful delivery of MDA. The setting of a preliminary hearing was stayed pending defendant's retention of counsel. On July 24 a preliminary hearing was set for August 16, 1974. However, on August 12 the grand jury returned the indictment against the defendant upon which he was tried. Defendant argues that the cancellation of the scheduled preliminary hearing violated his statutory right to a prompt preliminary hearing (Ill. Rev. Stat. 1973, ch. 38, par. 109—1(b)(3)). This matter was not argued in the trial court and is considered waived. (See *People v. Howell*, 60 Ill. 2d 117, 120-21 (1975).) In any event, a defendant is not entitled to a preliminary hearing as a right but to a probable cause determination made either in a preliminary hearing or by a grand jury with reasonable promptness. See *People v. Kent*, 54 Ill. 2d 161, 163-64 (1972); *People v. Hendrix*, 54 Ill. 2d 165, 169 (1973); and *People v. Howell*, 60 Ill. 2d 117, 119 (1975).

■■ Defendant further claims that the remarks of the prosecutor during the trial and during closing argument were prejudicial. Other than noting that the remarks occurred during the cross-examination of the defendant and of Jeffrey Hardesty while others were made during the prosecutor's summation and that the remarks concerned heroin and the effects of drugs on children, defendant has not specified any particular comment which he claims to be prejudicial and unfair so as to require a new trial. We consider the issue foreclosed by the defendant's failure to object during trial. (See *People v. Winters*, 29 Ill. 2d 74, 80 (1963).) From our review of the prosecutor's argument we find no reason to avoid the rule of waiver.

For the reasons stated the judgment is affirmed.

Affirmed.

GUILD, P. J., and HALLETT, J., concur.