THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DUANE FRANKLIN, Defendant-Appellant.

First District (4th Division)    No. 78-1639

Opinion filed December 27, 1979.—Rehearing denied January 18, 1980.

JOHNSON, J., dissenting.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Duane Franklin, was charged by indictment with murder, rape and burglary (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1, 11—1, 19—1). His motion to quash the indictment or be granted a post-indictment preliminary hearing was denied. After a jury trial in the circuit court of Cook County, defendant was found guilty of all charges and sentenced to a term of 200 to 600 years for the murder and rape, and a concurrent term of 6 to 20 years for burglary.

On appeal, defendant contends: (1) that the denial of a post-indictment preliminary hearing deprived him of equal protection of the laws as guaranteed by the State and Federal constitutions (Ill. Const. 1970, art. I, §2; U.S. Const., amend XIV); and (2) that, in imposing sentence, the trial court penalized him for exercising his right to a jury trial.

We affirm defendant's conviction and sentence.

Defendant was first charged with the June 10, 1976, rape and murder of Susan Greer and the burglary of her apartment by complaint for preliminary examination. While the complaint was pending and before a preliminary hearing had been held, defendant was indicted by the Cook County Grand Jury on the same charges. Defendant moved to quash the indictment or be granted a preliminary hearing: his motion was denied.

During plea negotiations prior to trial, defendant was allegedly offered a sentence of 18 to 50 years in exchange for a plea of guilty. The record does not contain a transcript of these negotiations or indicate whether the trial judge participated in them. Nonetheless, defendant persisted in his right to a jury trial and the trial proceeded.

The State's evidence disclosed that the victim, Susan Greer, resided in an apartment building at 2616 North Hampden Court in Chicago. Greer had sublet the apartment from James Cooke, an acquaintance of the defendant, at the beginning of June 1976. In a conversation with the defendant on June 9, 1976, Cooke mentioned that Greer had sublet his apartment. Late in the evening on June 9, other residents of Greer's apartment building were summoned by their door buzzer and admitted a man identified as defendant to the building. Defendant stated that he was looking for James Cooke and was told that Cooke no longer lived in the building. Early the following morning, defendant returned to Greer's

building and was again told by one of the residents that Cooke had moved out. Twenty minutes later, defendant was seen outside Greer's door. On the evening of June 10, Greer's body was discovered by one of the tenants.

Defendant was apprehended near his apartment building. Analysis of bloodstained clothes found in defendant's apartment revealed stains of the same blood type as that of the victim. Traces of blood were found in scrapings from defendant's fingernails, and defendant's shorts showed stains from spermatozoa.

Defendant's former wife was called by the defense. She stated that defendant left their apartment around midnight on June 9 and returned an hour or an hour and a half later. On the morning of June 10, defendant drove her to work shortly after 7 a.m. An acquaintance of the defendant testified that he could not recall whether he had seen defendant on June 9 or 10. The defense rested.

The jury returned verdicts of guilty on all counts of the indictment. Following a hearing in aggravation and mitigation, at which defendant's prior rape conviction was revealed, defendant was sentenced to 200 to 600 years for murder and rape and received a concurrent 6- to 20-year sentence for burglary. In his post-trial motion, defendant argued that the failure to grant him a preliminary hearing was a denial of equal protection. His post-trial motion was denied and defendant appeals.

OPINION

I

Defendant first contends that the statutory scheme which denies an indicted defendant the right to a subsequent preliminary hearing violates that defendant's right to equal protection of the laws as guaranteed by the State and Federal constitutions. Prior to the effective date of the 1970 Illinois Constitution, there was no constitutional reference to a preliminary hearing. The 1970 Illinois Constitution, article I, section 7, provides, in part:

"No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause."

The Illinois Supreme Court construed this constitutional provision in *People v. Kent* (1972), 54 Ill. 2d 161, 163, 295 N.E.2d 710, 711, where the court stated:

"The constitutional reference to a right to a preliminary hearing

is new. As we read the provision before us, it appears to be designed to insure that the existence of probable cause will be determined promptly either by a grand jury or by a judge."

Thus, an accused is entitled to a prompt preliminary hearing unless initially proceeded against by way of grand jury indictment. The critical consideration in either a preliminary hearing or grand jury indictment is that probable cause be determined promptly. See *People v. Kent* (1972), 54 Ill. 2d 161, 295 N.E.2d 710; *People v. Hendrix* (1973), 54 Ill. 2d 165, 295 N.E.2d 724; *People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403; *People v. Moore* (1975), 28 Ill. App. 3d 1085, 329 N.E.2d 893.

■■ Once a defendant is properly indicted, the necessity for a preliminary hearing to establish probable cause is vitiated. (*People v. Hendrix* (1973), 54 Ill. 2d 165, 295 N.E.2d 724.) If a defendant is initially charged by criminal complaint, but is indicted for the same crime prior to a prompt preliminary hearing on the complaint, he is not constitutionally entitled to a preliminary hearing. (*People v. Hendrix* (1973), 54 Ill. 2d 165, 295 N.E.2d 724; see *People v. Arbogast* (1976), 41 Ill. App. 3d 187, 353 N.E.2d 434.) Moreover, a finding of no probable cause at a preliminary hearing does not bar a subsequent indictment for the same offense. *People v. Kent* (1972), 54 Ill. 2d 161, 295 N.E.2d 710.

■■■ We do not agree with defendant that these alternative methods of instituting criminal proceedings constitute an unreasonable classification in violation of the equal protection clause of the State or Federal constitutions. A State may, consistent with due process, dispense with the preliminary hearing procedure and authorize the prosecutor to initiate the criminal proceedings directly. (*Lem Woon v. Oregon* (1913), 229 U.S. 586, 57 L. Ed. 1340, 33 S. Ct. 783; *People v. Redmond* (1977), 67 Ill. 2d 242, 367 N.E.2d 703, *cert. denied* (1978), 434 U.S. 1078, 55 L. Ed. 2d 785, 98 S. Ct. 1272.) Under the State constitution, a defendant is not entitled to a preliminary hearing as a right, but to a probable cause determination made either in a preliminary hearing or by a grand jury with reasonable promptness. (*People v. Arbogast* (1976), 41 Ill. App. 3d 187, 353 N.E.2d 434.) Both procedures serve the function of determining probable cause and to require a repetition of this function by initiating post-indictment preliminary hearings would be an empty formality serving no legitimate purpose. *People v. Moore* (1975), 28 Ill. App. 3d 1085, 329 N.E.2d 893.

Defendant argues that certain benefits adhere to the preliminary hearing proceeding, unfairly discriminating against that group of defendants who are proceeded against by indictment. In support of this contention he cites *People v. Duncan* (1972), 388 Mich. 489, 502, 201 N.W.2d 629, 635, in which the Michigan Supreme Court held that "[i]n all future cases wherein a defendant is accused of a felony, the right to a

preliminary examination shall exist." However, *Duncan* was not decided on constitutional grounds, but rather on the basis of the court's inherent supervisory power in the area of criminal procedure.

We also decline to follow the precedent set in *Hawkins v. Superior Court* (1978), 22 Cal. 3d 584, 586 P.2d 916, 150 Cal. Rptr. 435, where the California Supreme Court concluded that the denial of a post-indictment preliminary hearing deprived the accused of equal protection of the laws guaranteed by article I, section 7 of the California Constitution. *Hawkins* was decided solely on the basis of the State constitution, although supporting language in the opinion suggests that the court believed the Federal constitutional guarantee of equal protection was also violated. A strong dissent in *Hawkins* noted that no other Federal or State court appears to have held that a post-indictment hearing is required as a matter of constitutional law. In fact, several jurisdictions have rejected the arguments advanced by the defendant in this case. See *Seim v. State* (Nev. 1979), 590 P.2d 1152; *State v. Serl* (S. Dak. 1978), 269 N.W.2d 785; *LaTaille v. District Court* (1974), 366 Mass. 525, 320 N.E.2d 877; *Commonwealth v. McCloskey* (1971), 443 Pa. 117, 277 A.2d 764, *cert. denied sub nom. Pennsylvania v. McCloskey* (1971), 404 U.S. 1000, 30 L. Ed. 2d 552, 92 S. Ct. 560.

Although the United States Supreme Court has recognized that the preliminary hearing is a "critical stage" of the State's criminal process (*Coleman v. Alabama* (1970), 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999), it has never determined that a preliminary hearing is required. We conclude that the discovery and impeachment functions which are incidental byproducts of the preliminary hearing proceeding are not independent rights to be asserted apart from their function in ensuring that the accused receives a prompt determination of probable cause that a crime has been committed and that criminal proceedings should be instituted. (See *LaTaille v. District Court* (1974), 366 Mass. 525, 320 N.E.2d 877.) In our opinion the statutory and procedural safeguards built into the criminal justice system, the most important being the right of the accused to a fair and impartial trial (see *People v. Creque* (1978), 72 Ill. 2d 515, 382 N.E.2d 793), minimize any disparity which may arise from the State's two-part scheme of initiating criminal proceedings.

Finally, defendant notes potential abuses of the grand jury system. (See, *e.g.*, Kranitz, *The Grand Jury: Past—Present—No Future*, 24 Mo. L. Rev. 318 (1959); Calkins, *Abolition of the Grand Jury Indictment in Illinois*, 1966 U. Ill. L. F. 423.) Article I, section 7 of the 1970 Illinois Constitution articulates the right of the legislature to abolish the grand jury or limit its function. Thus, any modification or elimination of the grand jury system should be initiated by the legislature. It would be

inappropriate for an appellate court to attempt to compensate for possible defects in the grand jury system by finding unconstitutional a statutory scheme which has withstood repeated constitutional challenges.

## II

Relying on *People v. Moriarty* (1962), 25 Ill. 2d 565, 185 N.E.2d 688, and *People v. Dennis* (1975), 28 Ill. App. 3d 74, 328 N.E.2d 135, defendant contends that, in imposing a 200- to 600-year sentence for murder and rape, the trial court improperly sought to penalize him for exercising his right to jury trial. We disagree.

■■ ■ The general rule is that a mere disparity between the sentence offered during plea bargaining and the ultimate sentence imposed, of itself, does not warrant a reduction on appeal of the term of imprisonment imposed by the trial court. (See *People v. Hill* (1965), 58 Ill. App. 2d 191, 206 N.E.2d 269.) The exceptions found in *Moriarty* and *Dennis* are clearly distinguishable and inapplicable to the facts reflected in the record before us. In *Moriarty*, the sentence imposed by the trial court was reduced where the trial judge had openly commented that the severity of the sentence was intended to punish defendant for refusing to plea bargain. Although *Dennis* did not involve overt statements, the appellate court inferred that the sentence imposed was punitive where it was 20 times greater than the minimum offered during plea negotiations.

Here, the record contains no comment by the trial judge which would indicate he sought to punish defendant for persisting in his right to a jury trial. Additionally, although defendant contends he was offered 18 to 50 years during plea negotiations, no transcript of these negotiations or statement indicating that 18 to 50 years had been suggested to defendant is contained in the record. In *Dennis* the pertinent facts were evident from the record.

Even if we accept defendant's assertion that the 200- to 600-year sentence for murder and rape imposed at the end of his jury trial greatly exceeded the sentence suggested during plea negotiations, we cannot conclude that the trial court abused its discretion in sentencing defendant. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Since defendant was not sentenced under the new Illinois sentencing act (Ill. Rev. Stat., 1978 Supp., ch. 38, ch. V), the interpretation given in *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, of the appellate court's authority to review sentences under the new act has no bearing on the instant case. In light of defendant's criminal record and the severity of his crime, we find nothing in the record to demonstrate that the sentence imposed was improper.

For the reasons stated, defendant's conviction and sentence are affirmed.

Affirmed.

ROMITI, J., concurs.

Mr. JUSTICE JOHNSON, dissenting:

I respectfully dissent from the majority opinion affirming the sentence. The sentence handed down in this case constitutes a departure from the fundamental law, its spirit, and purpose. (*People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673; *People v. Ramey* (1969), 115 Ill. App. 2d 431, 253 N.E.2d 688; *People v. Juve* (1969), 106 Ill. App. 2d 421, 245 N.E.2d 293.) A sentence of 200 to 600 years is potentially a mockery to the spirit and purpose of the law and should be seen as abusive of the discretion vested in the trial court to render sentence. Our laws are based on fact and reason, yet a sentence of the length issued by the trial court is based upon fiction. The fiction is that such a great number of years is required to assure the permanent detention of the offender.

The majority opinion cites *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, in finding that the trial court did not abuse its discretion. Our reading of *Perruquet* reveals Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4)) grants reviewing courts the power to reduce the sentence by the trial court. The rule itself does not address the scope of this power or the circumstances under which it should be exercised. Decisions by this court have established that the imposition of a sentence is a matter of judicial discretion and that, absent an abuse of this discretion, the sentence of the trial court may not be reduced upon review. *Perruquet*, at 153.

I choose to dissent because of the apparent evolution of Illinois law limiting the scope of sentencing power. (*People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670.) That evolution indicates that we should closely examine the criteria that we use to measure the scope of sentencing power. It is not enough to say that the court exercised its discretion and overlook a sentence that is so patently unrealistic as to assign a term of several hundreds of years. We must qualify any such sentence as beyond reason and obviously abusive of judicial discretion.

Further, though mere disparity between the sentence discussed during plea bargaining and the ultimate sentence imposed does not mandate reduction of the term when appealed to this court, henceforth it should serve as a signal for this court to closely examine the rendered sentence. Such a disparity coupled with the assessment of a term of

hundreds of years should alert this court to exercise its power under Supreme Court Rule 615 and the applicable sentencing laws.

I would reduce the sentence rendered by the trial court and affirm the conviction.