(No. 38051.—

The People of the State of Illinois, Defendant in Error, *vs.* Leroy Jackson, Plaintiff in Error.

*Opinion filed September 23, 1966.*

HOWARD GILMAN, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES B. KLEIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant, Leroy Jackson, was convicted by a jury in the circuit court of Cook County and sentenced to a term of seventy-five years in the penitentiary for the crime of murder. He appeals directly to this court alleging: (1) that he was deprived of his constitutional right to a speedy trial; (2) that a confession introduced against him was obtained under circumstances which rendered it involuntary, and therefore inadmissible; (3) that the trial court erred in failing to give a certain instruction to the jury; (4) that the trial court erred in not allowing defendant a hearing on the admissibility of certain incriminating statements written by him on photographs introduced against him; (5) that the prosecution failed to prove him guilty beyond a reasonable doubt; (6) that the State introduced irrelevant and prejudicial evidence regarding fingerprints; (7) that the trial court made prejudicial remarks before the jury; (8) that the closing arguments of the State's Attorney were improper and prejudicial; and (9) that the sentence imposed was excessive.

The facts as summarized briefly in our prior opinion in *People* v. *Jackson,* 23 Ill.2d 263, 264, are as follows: "At about 4:00 A.M. on the morning of April 9, 1954, Louise Jackson, who was not related to defendant, was fatally stabbed in her bedroom at 3547 Cottage Grove Avenue, Chicago. The weapon used was a paring knife which had been stolen in the burglary of a nearby home approximately an hour earlier. Defendant was arrested on May 24, 1954, and, the following day, signed a 23-page confession stating in detail how he had acquired the knife in the earlier burglary and then killed Louise Jackson when she resisted his attempt to rob her. A gun found in his possession was likewise identified as one stolen at the same time the knife was taken".

Defendant's initial contention that he was denied a speedy trial is based upon the fact that he was tried three times for the same offense, extending over a period of seven years. At his first trial in March, 1955, he was found guilty and the death sentence was imposed. On appeal, we reversed and remanded the cause for a new trial on the ground that prejudicial evidence was improperly admitted. (*People* v. *Jackson,* 9 Ill.2d 484.) Defendant was tried again for the same offense in 1957, was found guilty and was sentenced to a term of 199 years in the penitentiary. An appeal to this court followed, and we again reversed and remanded the cause for a new trial on the ground that a transcript of defendant's testimony at a preliminary hearing was improperly admitted in evidence against him. *People* v. *Jackson,* 23 Ill.2d 263.

The opinion in the second appeal was filed on November 30, 1961. On December 20, 1961, on motion of defendant, the trial court entered an order redocketing and reinstating the case and continuing it until January 12, 1962. Thereafter, on motion of defendant, the case was further continued until January 19, 1962, on which day defendant was arraigned and entered a plea of not guilty. The cause was

subsequently continued on several occasions, all continuances being either on motion of the defendant or by consent of the defendant. The third trial, which defendant is here appealing from, was commenced on July 23, 1962.

On the state of the record before us, defendant's contention that he was denied a speedy trial can not be sustained. It is true that about 7 years had elapsed between his first and third trials. It is apparent, however, that much of the delay was occasioned by defendant, who prosecuted appeals from his first two convictions. The record in this case further shows that the delay ensuing between the date our mandate in the second appeal was issued and the date his third trial commenced was at the request of, or with the consent of, defendant. He is, therefore, in no position to claim he was deprived of a speedy trial. *People* v. *Green,* 23 Ill.2d 584; *People* v. *Hamby,* 27 Ill.2d 493; *People* v. *Stahl,* 26 Ill.2d 403.

The State's evidence in this case consisted in large part of the 23-page confession in which defendant admitted the murder and described the incident in detail. At the first trial, defendant moved to have the confession suppressed. A lengthy hearing on the motion was held at the conclusion of which the motion was denied. At the trial in the present case, it was stipulated that all of the evidence heard at the first trial would be the same in this case. In our first opinion we summarized that evidence as follows: "At the hearing on the motion to suppress, the defendant testified that he received beatings and other abuse from about every law officer involved. However, he presented no witness but himself in support of the charge, there was no medical or photographic corroboration, and he had told no one, including a preliminary hearing magistrate, of any such misconduct. In addition, he was flatly disputed by thirteen witnesses who had been with him at various times between his arrest and the signing of the confession. The statement was taken by a court reporter in the presence of an assistant State's At-

torney (who did the interrogating), police officers Henry Jurgenson and Antone Prunckle, Dorothy Nichols and Ida May Wilson. The two women were prosecution witnesses, who subsequently testified at the trial. After transcription, the statement was signed in the presence of the court reporter, the assistant State's Attorney, the two ladies, officer Jurgenson, and a homicide detective named William McCarthy. McCarthy was not present at the questioning; and Prunckle, who was, did not witness the later signing. All of the foregoing persons testified, and each in some material respect refuted the defendant's claims." (9 Ill.2d at 486-7.) It was our conclusion on the basis of this evidence that the trial court did not err in denying the motion to suppress the confession.

At the hearing on the motion to suppress the confession in the instant case, defendant also testified that he was not warned of his right to remain silent and was not informed of his right to consult with an attorney before making the confession. Defendant argues in his brief that these additional factors, when considered with the evidence heard at the hearing in the first trial, established that his confession was not voluntary.

The recent decisions of the United States Supreme Court in *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, and *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, have established the rights of individuals prior to and during interrogation by police. The *Escobedo* decision, however, is applicable only to persons whose trials began after June 22, 1964, the date of the *Escobedo* decision, and the *Miranda* decision applies only to those whose trials began after June 13, 1966, the date of the *Miranda* decision. (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882.) It is apparent that neither *Escobedo* nor *Miranda* apply in this case in which the trial took place in 1962.

Defendant does not contend that he ever requested to see an attorney before or during the time the confession was

made. We have previously held that the failure to warn an accused that he may remain silent and, in the absence of a request for counsel, a failure to inform an individual of his right to counsel during interrogation by police, do not render statements made to the police involuntary *per se* but are attendant circumstances which the court should consider in determining the voluntariness of the statement. (*People* v. *Hartgraves,* 31 Ill.2d 375; *People* v. *Kees,* 32 Ill.2d 299.) In our opinion, the trial court in this case, having before it the evidence adduced at the hearing on the motion to suppress in the first trial, notwithstanding defendant's testimony that he was not advised of his right to remain silent and to consult an attorney, could have properly concluded that defendant's confession was voluntary and therefore admissible.

Defendant also argues in his brief on appeal that we should take into consideration the fact that he was forced to expose himself prior to giving his confession, and that this factor must be considered with the other factors above referred to. There was no testimony either at the hearing on the motion to suppress the confession at the first trial, or at the hearing prior to the third trial, with regard to defendant's being required to expose himself. However, the transcript reveals that upon cross-examination by the defendant's counsel, William Cain, the following testimony was given by an assistant State's Attorney, Irving Lang, who had been present at the time the confession was given:

"Mr. Cain: Q. Did you ask him to do anything with reference to his clothing?

A. Not with respect to this case.

Mr. Cain: I ask that that be stricken as not responsive.

The Court: I'll let it stand.

Mr. Cain: Q. Did you have him do anything, with reference to his clothing, Mr. Lang?

A. Yes, sir.

Q. What did you have him do?

A. I had him drop his pants in my presence.

Mr. Cain: That's all.

The Court: Any other questions of Mr. Lang?

Mr. Flynn: Nothing further.

Mr. Garippo: No.

The Court: Thank you Mr. Lang."

The fact that a defendant is made to remove his clothing while being questioned is of course a highly significant factor to be considered in determining the voluntariness of his confession. However, it is not at all clear in this case when defendant was required to "drop his pants" or what the circumstances surrounding that incident were. The testimony of the assistant State's Attorney suggests that it was entirely unrelated to the confession in this case, and this inference finds support in the fact that defendant never raised this matter below in support of his motion to suppress the confession. We note also that the jury had before it testimony with regard to defendant's being required to remove his pants. In determining the weight to be given to the confession, they could consider this evidence for whatever it was worth. We do not think that on the state of the record such evidence requires us to overturn the trial court's ruling on the motion to suppress the confession.

Defendant's next contention is that the trial court erred in not giving an instruction to the jury that they could consider any facts about the confession in determining the weight to be given said confession. It appears that at the trial defendant did not tender an instruction which referred specifically to a "confession". However, he did tender the following instruction, which was given: "The court instructs the jury that while admissions are competent to be given in evidence against the party who makes them, they depend on the circumstances under which they were made. It is the province of the jury to decide the weight to be given to admissions, and in so doing, they have a right to take into consideration the circumstances under which they

were made in the relation and condition of the parties to such admission and the ability of the witnesses to recollect such admissions as they were originally made." We think that this instruction, even though it uses the word "admissions" instead of "confessions" was sufficient to instruct the jury that it could take into consideration the circumstances under which the confession in this case was made.

Immediately subsequent to the trial court's denial of defendant's motion to suppress the confession, counsel for defendant made the following motion:

"MR. CAIN: Your Honor, in line with the motion to suppress the confession, there is a picture of a trunk which has writing on it, purportedly, by Leroy Jackson: 'The trunk was closed when I entered the door. This is the door I left by', and his signature is on that. There is another picture of a window, which purportedly has the signature of Leroy Jackson on it, and words something to the effect of, 'This is the window I came in'.

"I wish to urge the Court to suppress these, too, on the basis that he was not warned of his constitutional right against self-incrimination, upon signing these pictures, photographs."

The court then responded, "I am not ruling at this time on the admissibility of these photographs, but on your specific objection, my ruling would be the same; that the writing on these, if they are admissible in evidence, the writings on these by your client, the defendant here, would be admissible in evidence. But I will pass upon the admissibility of the photographs, themselves, when we come to that question in the course of the trial."

During the course of the trial the two photographs with the writings on them were admitted in evidence over defendant's objection that they were posed. Defendant now contends that the trial court erred in not conducting a hearing on the admissibility of the statements written on the photographs at the time his pre-trial motion to suppress was

made. It is clear from the record that the trial judge had ruled upon the constitutional objection, and was reserving other questions as to admissibility. No further hearing on the constitutional question was required. The photographs themselves were clearly not of an inflammatory nature.

Defendant next argues that the trial judge made comments before the jury which discredited defense counsel in the eyes of the jury and thus prejudiced defendant. We have examined the record carefully, and do not find any remarks by the trial judge which, singly or collectively, were unfair or improper. Defendant's contention cannot be sustained.

Defendant contends further that the State introduced certain "evidence concerning fingerprints which was of a nonprobative value but was introduced merely as 'window dressing' to the defendant's detriment." It appears that the first reference to fingerprints was elicited by defendant on cross-examination of certain of the State's witnesses about police procedures at the scene of the crime. Thereafter, Oscar Behnke testified for the State on the subject of fingerprints. The substance of his testimony was that the prints obtained in Louise Jackson's apartment were not suitable for comparison purposes. Such testimony was primarily neutral in character, and was not, in our opinion, prejudicial to defendant. Furthermore, we note that defendant did not at any time object to Behnke's testimony and is therefore in no position to complain now of its admission.

Defendant also contends that in his closing argument to the jury, the assistant State's Attorney indicated to the jury that he was expressing a personal belief as to defendant's guilt which was highly improper. (*People* v. *Burnett,* 27 Ill.2d 510.) As we noted in *People* v. *Williams,* 26 Ill.2d 190, 193, it is "proper for a prosecutor to argue or express his opinion that the accused is guilty, where he states, or it is apparent  *  *  *  that such opinion is based solely on the evidence". This, we think, was the situation in this case.

We have examined the prosecution's closing argument and do not find any improper expressions of personal opinion of guilt which require reversal.

Defendant's final contention is that the sentence of 75 years was unduly severe, and he therefore requests a reduction of sentence. Considering the nature of the crime, we do not feel that the trial court abused its discretion in imposing a 75-year sentence in this case. No arguments have been advanced which justify a reduction of sentence by this court.

The judgment of the circuit court of Cook County, criminal division, is affirmed.

*Judgment affirmed.*