THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* BERTRAM ROSS *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 62769, 62781-62787 cons.

Opinion filed October 26, 1977.

Patrick A. Tuite, of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Robert Retke, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The defendants in this case were charged with operating motion picture projectors without licenses in violation of the Municipal Code of Chicago, chapter 155, section 155—8 and/or section 155—25. After a trial without a jury, each of the defendants was fined $200 plus $5 costs.

The defendants argued at trial that the evidence was insufficient to sustain a conviction, and that section 155—25 specifically exempts operators of the type of equipment used in these cases from the licensing requirements of the ordinance. On appeal, the defendants again raise these issues, arguing additionally that the City of Chicago was never granted authority by the legislature to license motion picture projectionists and that therefore the licensing ordinance is invalid.

The evidence presented at trial was as follows: On February 13, 1975, city inspectors went to the Newberry Theatre at 854 N. Clark Street and proceeded to the projection booth where defendant Bertram Ross was operating a motion picture projector. The projector, which was projecting 16 millimeter film, had a meter which read 35 amperes and there was a 35 xeon lamp in the machine. Ross did not have a license to operate the machine. No tests were conducted to check the accuracy of the meter.

The validity of the argument as to the sufficiency of the evidence as it affects defendants Brown, Desider, Vasquez, Anderson, and Ducar is contingent upon the existence of a stipulation that this evidence presented in the case against Ross was to be considered as evidence applicable to the other cases. The City asserts that at the outset of the proceedings, the

court and counsel agreed that the evidence presented against Ross was to be considered representative of the evidence against all the defendants, that the defense to be presented was essentially legal, and that this stipulation reached at the beginning of the morning session was acknowledged at the outset of the afternoon session by a defense attorney. The defendants contend that while defense counsel had been willing to stipulate to the evidence and try the matter on strictly legal issues regarding the applicability of the ordinance to the conduct of the defendants, the record shows that the prosecuting attorney specifically refused to do so.

■■ While the corporation counsel initially indicated a refusal to stipulate to any evidence, the City argues that the subsequent course of the trial "very clearly indicates that all parties and the court proceeded under the assumption" that such a stipulation had been entered. However, the record reveals only an exchange between the trial court and one of the attorneys for the defense in which the court, during the afternoon hearing, stated that a fine was being entered "pursuant to the stipulation with counsel that the evidence produced here in one case will apply to all of these cases" and to which the defense attorney replied, "Yes, Judge." The defendants contend that the attorney who responded affirmatively to the judge's reference to a stipulation was not aware of what had transpired earlier. While he was listed as one of the two attorneys of record in the transcript of proceedings of the morning session, an examination of the records turns up no evidence of his participation in the morning session. However, whether he was present at the earlier proceedings or not, we do not believe that his answer, "Yes, Judge" is sufficient to bind the defendants to a stipulation into which the corporation counsel had earlier refused to enter. In the absence of any further evidence regarding a stipulation, we cannot agree that the parties in fact agreed to stipulate that all evidence presented in the case against Bertram Ross would be applicable to all the defendants. Consequently, since there was no evidence presented as to defendants Brown, Desider, Vasquez, Anderson and Ducar, those convictions must be reversed.

The remaining defendant, Bertram Ross, argues that the evidence introduced at his trial was insufficient to sustain his conviction since the evidence did not prove that the equipment which he was operating was the type which came within the purview of the ordinance. The sections of the Municipal Code which are at issue state:

"155—8 It shall be unlawful for any person to operate a professional motion picture projecting machine or device for any public or private gathering without first having obtained a license as a motion picture projecting machine operator, provided that sections 155—8 to 155—27 inclusive *shall not apply to the operation*

*of any motion picture projecting machine or device of a miniature non-professional type* when the film used is not more than 16 millimeters in width which film is regularly supplied only as slow burning (cellulose acetate or equivalent) film. (Amend. Coun. J. 8—26—53, p. 5501.)" (Emphasis added.)

"155—25 It shall be unlawful for any person to operate a professional *or any type of projection equipment using 15 amperes or more current* for any public or private gathering without having first obtained a license as a motion picture projecting machine operator, provided that sections 155—8 to 155—27 inclusive shall *not* apply to the operation of any motion picture projecting machine or device *of a miniature non-professional or non-professional type.* (Amend. Coun. J. 1—9—46, p. 4741; 12—22—47, p. 1590; 8—26—53, p. 5501.)" (Emphasis added.)

The defendant was convicted in part on the testimony of a city inspector that Ross was operating a projector with a meter which read 35 amperes in violation of section 155—25. The defendant claims that since the City's evidence did not indicate that the meter on the projector was tested and found to be accurate, it failed to establish that the projection equipment was actually using 35 amperes of current. The defendant cites cases in which persons found guilty of speeding violations successfully appealed their convictions on the ground that the particular radar or vascar device used to detect their excessive speed had not been tested for accuracy. See, *e.g., People v. Abdallah* (1967), 82 Ill. App. 2d 312, 226 N.E.2d 408.

■■ Section 155—25 prohibits the operation of equipment using 15 or more amperes of current without a license. The essential factor is not the specific amount of electricity actually flowing through a projector at any given moment, but the amount of electricity with which the projector is designed to operate. The accuracy of the meter is then irrelevant. It was established at trial that the projector at the Newberry Theatre was 35 ampere equipment. Unless the ordinance exempts operators of the type of equipment involved here, the violation was established.

The defendant argues that the Municipal Code, chapter 155, sections 155—8 and 155—25, specifically exempts the operators of the type of equipment used here from the dictates of the licensing ordinance since it exempts projectors of a miniature nonprofessional or nonprofessional type. In support of this contention the defendant cites section 88—540.1(a), (b) and (c) which defines the equipment as follows:

"(a) *Miniature, Non-professional Type.* Equipment ordinarily used by the general public for home movies and family entertainment, specifically approved and labeled by a testing

laboratory. For use with slow-burning film, 16 millimeter or less in width, and with a maximum capacity of 2,000 feet.

(b) *Non-professional Type.* Approved equipment which utilizes slow-burning film, 16 millimeter or less in width, and with a maximum film capacity of 2,000 feet.

(c) *Professional Type.* Equipment of a class and type ordinarily used in motion picture theatres, shows, exhibitions, and other such locations, where people assemble to be educated or entertained. Projectors and equipment of this category shall comply with all applicable provisions of 88—540.2."

The evidence adduced at trial showed that the equipment which the defendant was operating used 16 millimeter film, but did not indicate whether the film was slow-burning, nor did it indicate the film footage capacity. Section 155—25 requires a license for the operation of any projector using in excess of 15 amperes, which would encompass the projector used by the defendant. The only indication of type as defined in section 88—540.1 is that the projector used 16 millimeter film. The defendant argues that a "professional" machine is one which uses larger than 16 millimeter film. The defendant continues that the word "ordinarily" is the key to interpreting the ordinance and that if a larger (over 16 mm.) projector were to be used in the home, a licensed projectionist would have to be employed; conversely, if equipment "ordinarily" found in the home were to be used in a motion picture theatre, a licensed projectionist would not be required. The defendant claims that the projector at issue here is the type ordinarily found in the home and its use in a theatre does not necessitate the licensing of its operator.

■■ However, it would be more reasonable to assume that the use of the word "ordinarily" was meant to be descriptive of the normal uses of certain equipment. Certainly, it would be unreasonable to expect a home movie enthusiast to obtain a license in order to legally engage in his hobby. The City argues that the provisions of section 88—540.1 do not define *all* equipment using 16 millimeter film and with a capacity of less than 2000 feet as nonprofessional. Although those qualities are essential, they apparently are not all inclusive. There are no further specifications to describe exactly what kinds of projectors are within the "professional type" category, other than "equipment of a class and type ordinarily used in motion picture theatres * * *." We must agree that the 35 ampere equipment at issue here is not of the nonprofessional type ordinarily used in the home, and therefore, the projector was not within the exempt category.

■■ Finally, the defendant argues that the City had no authority to

license motion picture projectionists since the General Assembly never delegated such power. At no time was this issue addressed to the trial court. As the court stated in *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417:

> "It has frequently been held that the theory upon which a case is tried in the lower court cannot be changed on review, and that an issue not presented to or considered by the trial court cannot be raised for the first time on review." (Accord, *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 335 N.E.2d 448.)

Consequently, this court will not consider the question of the validity of the ordinances and the authority of the City to license motion picture projectionists.

For the foregoing reasons, the conviction of defendant Bertram Ross is affirmed. The convictions of defendants Brown, Desider, Vasquez, Anderson and Ducar are reversed and remanded.

Affirmed in part.
Reversed and remanded in part.

McNAMARA and McGILLICUDDY, JJ., concur.