THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FELIPE AGOSTO, Defendant-Appellant.

First District (4th Division)   No. 77-1618

Opinion filed April 5, 1979.

J. Chris Goodman, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Felipe Agosto, was charged by information with the unlawful delivery of a controlled substance. (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(b).) After a jury trial in the circuit court of Cook County, defendant was found guilty and sentenced to a term of five to 15 years in

the penitentiary. On appeal, defendant raises four issues for our consideration: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether the trial court improperly limited the defense's cross-examination of the State's witnesses; (3) whether certain comments by the prosecutor during closing argument were prejudicial; and, (4) whether the sentence imposed was excessive.

We affirm the judgment of the trial court.

Defendant was charged with selling heroin to Chicago Police Officer Ricardo Aereu. On November 18, 1976, Officer Aereu was assigned to make undercover purchases of controlled substances. Three additional policemen, Investigators Philip Cline and Thomas Neustrom and Officer Terence O'Connor, were assigned to work in conjunction with Aereu.

At trial Aereu testified that he approached defendant in a snack shop in the 3900 block of Sheridan Road, Chicago, and during their conversation told defendant that he was interested in purchasing a bag of heroin. The defendant agreed to sell him the heroin for $30. Aereu and defendant proceeded to a nearby tavern where defendant went inside and immediately returned with Victor Mardeci. From there the three men walked about one block to the Carlos Hotel. Outside the hotel, Aereu handed defendant $30 and then waited while defendant and Mardeci went inside. Approximately five minutes later, defendant and Mardeci returned and Mardeci handed Aereu a packet of a substance later identified at trial by a Chicago Police Department chemist as heroin. Having completed the transaction, Aereu went to meet his three partners at a pre-arranged location.

When Aereu made the purchase on November 18, 1976, he knew defendant only by the name of "Boogaloo," but, thereafter, Aereu learned defendant's actual name. Aereu encountered defendant on two additional, separate occasions before defendant's arrest on November 29, 1976. During this period of time Aereu continued to work undercover and made three or four additional purchases of controlled substances in the same area.

Aereu described the man from whom he purchased the narcotics as about 35 years old, 145 pounds, 5 feet 6 inches tall, wearing brown hair in an afro style. Aereu said the man was attired in a blue jacket and brown pants and did not have a moustache but may have had a goatee. Aereu positively identified defendant as this man.

Investigator Cline testified that on November 18, 1976, he was assigned to cover Aereu to ensure his safety and to witness any drug purchases which Aereu transacted. Cline stated that from a gas station across the street he observed Aereu enter the snack shop and, through a large picture window, could see Aereu conversing with a man Cline identified in court as the defendant. Cline described this man as

approximately 30 to 32 years old, 160 pounds, 5 feet 8 inches tall, with dark brown or black, medium length hair. The man was wearing a blue jacket and brown pants. The only noticeable feature he observed was a ruddy complexion.

Cline observed the two men leave the snack shop and go to the tavern where they were joined by Victor Mardeci. From the opposite side of the street, at a distance of approximately 80 feet, Cline watched the men walk to the Carlos Hotel and observed the drug transaction. After Aereu completed the purchase, Cline left his vantage point to rendezvous with his partners. At that time, Cline field tested the contents of the bag purchased by Aereu and identified the presence of opium. Cline then transported the bag to the police station.

Investigator Neustrom testified that on November 18, 1976, he was assigned to work with Aereu, Cline and O'Connor. Neustrom was then questioned regarding the chain of custody of the bag of heroin purchased by Aereu from 9 p.m. on November 18, 1976, through testing procedures at the police crime lab and until the time of trial. On cross-examination defense counsel attempted to ascertain Neustrom's activities at 8:30 p.m. on the night in question. The State objected to this line of questioning as being outside the scope of direct examination and the trial court sustained the objection.

The only evidence presented by the defense was one photograph of the defendant taken on November 30, 1976, in which defendant is wearing a moustache but no goatee. In rebuttal, the State called Larry Goldberg, the manager of the Carlos Hotel. Goldberg testified that he had known defendant for several years and that defendant usually wore a moustache; however, he could not state whether defendant had a moustache on November 18, 1976.

The jury returned a verdict of guilty and the trial court entered judgment accordingly. At the sentencing hearing, the State introduced evidence of defendant's three prior convictions for drug-related felonies and a fourth felony conviction. In mitigation, the defendant delivered a personal statement, professing his innocence. The trial court sentenced defendant to five to fifteen years imprisonment and the defendant proceeded with this appeal.

Opinion

I

Defendant first argues that he was not proved guilty beyond a reasonable doubt. This contention is based on alleged discrepancies in the identification testimony given by Aereu and Cline.

On the day of the transaction Aereu was close enough to the defendant to carry on a conversation with him and shake his hand. Aereu also encountered defendant on two other occasions between the time of the transaction and his subsequent arrest. During the interim period, Aereu made similar purchases of narcotics in the same general locale from three or four other persons. At trial, Aereu stated that he could provide a good description of the man from whom he purchased heroin on November 18, 1976, and positively identified defendant as that man. Cline, the other occurrence witness, viewed the transaction from across the street at a distance of about 80 feet. He stated that from his vantage point he had a good view of the transaction which took place in large part on the street corner. He also positively identified the defendant. Aereu described the man from whom he purchased the heroin as having no moustache but, possibly, a goatee. Cline testified that he did not remember whether the man had a moustache or other noticeable facial hair.

To discredit the positive identification made by these two occurrence witnesses, defendant relies on a photograph taken of him on the day after his arrest, 12 days after the transaction, in which it appears that he has a moustache but no goatee. Defendant also claims that the testimony of Larry Goldberg, the State's rebuttal witness, indicates that defendant usually wore a moustache.

■■ Neither the photograph of defendant, taken 12 days after the occurrence, nor Goldberg's testimony indicates with any certainty that defendant was wearing a moustache on November 18, 1976. Even if it could be determined from this evidence that defendant did in fact have a moustache on that date, the failure of the identification witnesses to note it is not such a substantial discrepancy as to create a reasonable doubt of defendant's guilt.

A summary of the law on this question was given in *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 615-16, 378 N.E.2d 1318, 1324.

> "While it is true that a conviction cannot stand if the identification testimony is vague, doubtful and uncertain, especially if the identification testimony reveals a failure to mention some physical feature [citations], nevertheless, it is well established that where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. [Citations.] And while it is true that the failure to include a certain physical characteristic in the original description of the offender may affect the credibility of the

description, the important factor is the ability of the witness to make a positive identification after having had an adequate opportunity to view the offender at the time of the crime. [Citation.] Where the witness makes a positive identification, precise accuracy in the preliminary description is not necessary."

Thus, where a witness' identification is positive and precise, accuracy in describing facial characteristics or attire is unnecessary. (*People v. Jackson* (1974), 23 Ill. App. 3d 945, 320 N.E.2d 591.) The failure to detect the presence or absence of a moustache is a minor discrepancy and does not destroy the credibility of the witness. *People v. Marbley* (1975), 34 Ill. App. 3d 434, 340 N.E.2d 247; *People v. Carroll* (1973), 12 Ill. App. 3d 869, 299 N.E.2d 134.

■ No reasonable doubt of guilt is created by the fact that Investigator Neustrom was not asked by the prosecution to identify the offender. There is no indication from the record that Neustrom could have identified the person from whom Aereu purchased the heroin and, thus, no negative inference can be drawn from the fact that he was not asked to do so.

■ Here the evidence is not so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to defendant's guilt, and, therefore, we will not set aside the finding of the trier of fact. *People v. Davis* (1977), 53 Ill. App. 3d 424, 368 N.E.2d 721.

## II

Defendant next contends that the trial court committed reversible error by restricting defense counsel's cross-examination of Investigator Neustrom. After preliminarily reciting his assignment on the night of November 18, 1976, Neustrom's testimony on direct examination was limited to establishing the chain of custody of the bag of heroin purchased by Aereu from the time the bag was turned over to Neustrom for processing at 9 p.m. that night until the time of trial. On cross-examination the trial court sustained objections to questions about Neustrom's activities prior to 9 p.m. on that date.

■ Generally the scope of cross-examination is limited to matters raised on direct examination. (*People v. DuLong* (1965), 33 Ill. 2d 140, 210 N.E.2d 513.) Collateral matters may be gone into on cross-examination for the limited purpose of testing the witness' credibility. (*People v. McGhee* (1974), 20 Ill. App. 3d 915, 314 N.E.2d 313.) However, the latitude to be allowed in cross-examination rests in the sound discretion of the trial court. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387.) A court of review will not find reversible error where cross-

examination might have been unduly restricted unless there was a clear abuse of this discretion, resulting in manifest prejudice. *People v. Hubbard* (1973), 55 Ill. 2d 142, 302 N.E.2d 609; *People v. Yancey* (1978), 57 Ill. App. 3d 256, 372 N.E.2d 1069.

■■ Although it is true that cross-examination should be given a broader scope where the witness has testified as to the identification of the offender (see *People v. Watkins* (1974), 23 Ill. App. 3d 1054, 320 N.E.2d 59), this principle is inapplicable to Neustrom, who was not called upon to identify the defendant. In light of the fact that Neustrom's testimony was limited to the narrow chain of custody question, we find neither an abuse of discretion nor prejudice to defendant resulting from the limitations placed on the cross-examination of this witness.

Defendant's reliance on *Brookhart v. Janis* (1966), 384 U.S. 1, 16 L. Ed. 2d 314, 865 S. Ct. 1245, is misplaced. It dealt with the Ohio procedure of prima facie trial in which the defendant is totally denied the opportunity to cross-examine witnesses against him. The issue raised by defendant in this case involves the proper scope of cross-examination rather than the absolute denial of the right to cross-examine.

### III

Defendant also claims that certain remarks made by the prosecutor were improper and prejudicial. In the first of these remarks during final argument, the prosecutor asked the jury to consider the difficulties law enforcement agencies face in attempting "to eradicate a problem that is prevalent on the street." Defendant contends that the prosecutor's reference to the prevalence of the drug problem was improper.

■■ Where the prosecutor's comments are based on facts in the record or fairly inferred therefrom, it is not improper to emphasize the evils of crime or to argue in favor of the effective administration of justice. (*People v. Griggs* (1977), 51 Ill. App. 3d 224, 366 N.E.2d 581; *People v. Taylor* (1974), 18 Ill. App. 3d 367, 309 N.E.2d 642.) In view of the evidence presented we believe the prosecutor's "prevalence" comment was fairly made.

■■ Defendant next objects to the prosecutor's assessment of the truthfulness of the State's identification witnesses and his comment on the poor quality of the photograph introduced by defendant. It is legitimate argument for the prosecutor to tell the jury the State's witnesses told the truth and are more credible than the evidence introduced by the defense. (*People v. Hoffman* (1948), 399 Ill. 57, 77 N.E.2d 195.) Similar comments on the credibility of witnesses have been held not to be improper personal statements by the prosecutor of his opinion as to defendant's guilt. (*People v. Oden* (1975), 26 Ill. App. 3d 613, 325 N.E.2d 446.) Further-

more, the prosecutor's statement regarding the photograph was invited by defense counsel's assertion that the photograph clearly established that defendant had been misidentified. See *People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904.

Finally, defendant contends that certain questions asked by the prosecutor were improper attempts to establish defendant's poverty. We note that no comment was made by the prosecutor at trial regarding defendant's wealth or poverty and that the trial court sustained defense counsel's objections to questions regarding defendant's employment. We do not find any prejudice resulting to defendant from this unsuccessful line of questioning. (See *People v. Finley* (1978), 63 Ill. App. 3d 95, 379 N.E.2d 645; *People v. Fleming* (1964), 54 Ill. App. 2d 457, 203 N.E.2d 716.) For the reasons set forth above, the remarks of the prosecutor do not require this court to order a new trial.

## IV

Defendant's final contention on appeal is that the sentence imposed is excessive and should be reduced. While this court has the power to reduce sentences (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(4)), "the imposition of a sentence is a matter of judicial discretion and * * *, absent an abuse of this discretion the sentence of the trial court may not be altered upon review." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) The trial judge who heard the testimony at trial and the matters presented at the hearing in aggravation and mitigation is normally in a better position than a reviewing court to determine the punishment to be imposed. The scope of our examination is thus limited to whether the record discloses that the trial court abused its discretion by imposing the sentence in the instant case.

■■ The record clearly reveals that the sentencing judge reached his decision only after considering the nature and circumstances of the offense and the defendant's presentence report. In view of defendant's previous convictions for similar offenses, we cannot say that the trial court abused its discretion in imposing a sentence of five to 15 years.

For the reasons stated in our opinion, the judgment of the trial court is affirmed.

JIGANTI, P. J., and ROMITI, J., concur.