THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EARL WILSON, Defendant-Appellant.

First District (5th Division)   No. 79-627

Opinion filed August 15, 1980.—Rehearing denied September 22, 1980.

694

Ralph Ruebner, Richard E. Cunningham, and Bradley S. Bridge, all of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Joel A. Eisen-Stein, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of rape and deviate sexual assault, acquitted of armed robbery, and given concurrent sentences of 22 years for each conviction. On appeal, defendant contends that (1) he did not receive a fair trial because of the State's presentation of a prejudicial "theme of flight and escape" throughout the trial; (2) the denial of a preliminary hearing deprived him of equal protection of the law; (3) certain hearsay evidence was improperly admitted; and (4) he was prejudiced by comments made in the State's closing argument.

There is no contention that guilt was not established beyond a reasonable doubt and, accordingly, only the evidence pertinent to the issues raised will be set forth herein.

Initially, it is noted that defendant was scheduled for preliminary hearing on the day after his arrest, but earlier that day his case was presented to a grand jury which indicted him for armed robbery, rape,

and deviate sexual assault. Prior to trial, a motion to quash the indictment was denied.

At trial, the victim, Cheryl Poole, testified that she first met defendant when he came to her apartment and tried to sell her a coat and other merchandise. At that time she told him she was not interested, and three days later she encountered him on the stairs in her building where he identified himself and said he lived in apartment 1209 of the same building. Four days later she was in her apartment with her 1-year-old son John, when defendant came to her door and asked if he could come in for a cigarette. She agreed, and when he came in he pulled out a knife, put it to her stomach, and forced her into the bedroom. There, a struggle ensued during which defendant punched her on the left side of her face and cut her wrist with a knife. He threatened to kill her and demanded that she remove her clothes. He then forced her to perform two acts of oral sex and two acts of intercourse—following which he cut a sheet into strips with which he tied and gagged her. After he left, she freed herself and went with her son to the home of Gladys Stroud, the mother of her child's father, who lived a half block away. She told Mrs. Stroud that she had been raped and that items had been stolen from her apartment. Mrs. Stroud called the police and, after Cheryl answered their questions, she went with two officers to her apartment building. When the police did not find defendant in apartment 1209, they took her to Michael Reese Hospital for treatment. On her return later that evening, she put the strips of sheets that had been used to bind her into a paper bag and gave them to the police officers.

Mrs. Stroud testified that when Cheryl came to her apartment she was crying, her nose and wrists were bleeding, and her jaw was swollen; that Cheryl told her she had been raped and beaten by a man named "Earl"; and that she called the police.

Police investigator Dorrociak testified that at the Michael Reese Hospital he noticed that Cheryl's mouth was red and swollen and that her left wrist was lacerated; that he and his partner went to apartment 1209 in Cheryl's building to talk to defendant and that after he spoke with Dwanda Beard, the occupant of apartment 1209, he and his partner went to the area of 39th Street and King Drive to look for defendant but were unable to find him; that they then returned to Cheryl's apartment, where she took a torn sheet from the bed, a piece of cloth from the floor of the bedroom, and numerous strips of sheeting from the floor of the kitchen—all of which she placed in a paper bag and gave to them; and that, before leaving the building, he gave his card to Dwanda Beard and told her that if she saw defendant to inform him that he was wanted for rape.

It appears that on March 15, 1978, the police were called to apartment 1209 because of an altercation between Dwanda Beard and

defendant (the offenses against Cheryl Poole having occurred on February 27). Officer Moser was one of the officers called, and he testified that he took defendant to the Provident Hospital for X rays; that he entered the X-ray room with defendant, removed the handcuffs, and left the room and that he remained outside until "the X-ray technician came out and asked [him] [where his] prisoner was." An objection was then made to any further testimony from the witness showing that defendant had escaped from custody at that time. Before ruling on the objection, the court permitted a *voir dire* examination of Moser and his partner (Constanzo) in which the latter testified that on March 15 he investigated a disturbance involving defendant and his girl friend, Dwanda Beard— which resulted in the arrest of defendant when Beard insisted on pressing charges, and that Beard told him (Constanzo) that defendant was wanted on other charges of rape and home invasion. Both Constanzo and Moser testified that before they took him to the hospital, defendant was told that he was being held for resisting arrest, battery, robbery, and rape. After the *voir dire* examination, the court instructed the State not to pursue further questioning concerning defendant's escape, stating that the probative value of the evidence was outweighed by its prejudicial effect since a conclusion could be drawn that defendant was fleeing from the charges placed against defendant by Dwanda Beard rather than the offenses involving Cheryl Poole.

Opinion

Defendant first asserts that he was denied a fair trial by the prosecution's presentation of a "theme of flight and escape" throughout the trial. Initially, defendant maintains that the State in its opening statement improperly implied that he had escaped from police custody. The record discloses that in his opening argument the prosecutor said defendant was taken to the X-ray section at Provident Hospital by Officer Moser, who was asked to wait outside while defendant was being X-rayed. An objection that evidence of escape was highly prejudicial and immaterial to the charge was overruled, following which the prosecutor told the jury that after a short period of time, Officer Moser determined that defendant was no longer in the X-ray room; that a number of officers tried to locate defendant; and that eventually defendant was located approximately three blocks from the hospital.

■■ An opening statement should contain an outline of competent facts which the prosecutor in good faith expects to prove (*People v. Weller* (1970), 123 Ill. App. 2d 421, 258 N.E.2d 806; see *People v. Bolton* (1976), 35 Ill. App. 3d 965, 343 N.E.2d 190), and, while it is improper to make comments during the opening statement on evidence that is not produced at trial (*People v. Warmack* (1979), 73 Ill. App. 3d 783, 392 N.E.2d 334;

*People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413), evidence of the escape or attempted escape of an accused while in custody is admissible as a fact raising a presumption of guilt (*People v. Gambino* (1957), 12 Ill. 2d 29, 145 N.E.2d 42, *cert. denied* (1958), 356 U.S. 904, 2 L. Ed. 2d 582, 78 S. Ct. 566; *People v. Curtis* (1972), 7 Ill. App. 3d 520, 288 N.E.2d 35). It is thus a proper topic for discussion in an opening statement, and therefore we find that the court did not err in overruling the objection to the prosecutor's comments in his opening statement concerning escape.

■■ At trial, Officer Moser testified that after he left defendant in the hospital X-ray room, the technician came out and asked where his prisoner was. An objection was made as to further testimony as to escape, and a *voir dire* examination of Moser and his partner was then held—after which the court sustained an objection to testimony concerning any escape from the hospital on the basis of its belief that a conclusion could be drawn that defendant was fleeing because of charges made by his girl friend (Dwanda Beard) rather than because of the offenses involving Cheryl Poole. This ruling was incorrect, as it appears to be well established that evidence of escape is admissible even though the accused is being held on more than one charge. In *People v. Sheridan* (1977), 51 Ill. App. 3d 963, 967, 367 N.E.2d 422, 425, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 68, 98 S. Ct. 1622, the court said the following:

> "The first argument advanced is that evidence of an escape is not relevant when defendant is being held on more than one charge since any circumstantial evidence of guilt derived from the fact of the escape attempt is negated where it is possible defendant sought to escape from the second charge. The above position, however, has never been followed in Illinois. Rather, we feel the fact that defendant is being held on more than one charge should only go to the weight of the inference to be drawn from the fact of the escape attempt since the defendant may offer any proof which would explain the circumstances surrounding his escape or escape attempt."

See also *People v. Harris* (1972), 52 Ill. 2d 558, 288 N.E.2d 385; *People v. Ligon* (1973), 15 Ill. App. 3d 746, 305 N.E.2d 212; *People v. Neiman* (1967), 90 Ill. App. 2d 337, 232 N.E.2d 805.

■■ Thus, the State having been prevented by defendant from producing through Officer Moser the evidence of escape mentioned in opening statement, defendant cannot now complain that he was prejudiced by the failure to introduce it.

■ A corollary argument of defendant is that he was prejudiced by repeated inferences during trial that he was fleeing to avoid capture on the charges involving Cheryl Poole. We disagree. As stated above,

evidence of flight—"the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest, detention, or, the institution of criminal proceedings" (*People v. Griffin* (1974), 23 Ill. App. 3d 461, 463, 318 N.E.2d 671, 674) is admissible as a circumstance from which the trier of fact can infer, along with all other facts, a consciousness of guilt (*People v. Harris* (1972), 52 Ill. 2d 558, 288 N.E.2d 385). However, while evidence that defendant was aware that he was a suspect is essential to prove flight (*People v. Herbert* (1935), 361 Ill. 64, 196 N.E. 821), actual knowledge of his possible arrest is not necessary to render such evidence admissible where there is evidence from which such fact may be inferred. *Griffin; People v. Torres* (1977), 53 Ill. App. 3d 171, 368 N.E.2d 361.

In the instant case, Cheryl testified defendant was not in his apartment when she and the police officers went to look for him after the rape, and Officer Dorrociak stated that after he spoke to defendant's roommate, he went to the area of 39th Street and King Drive in an unsuccessful search for defendant. This evidence coupled with other testimony to which no objection was made, that Officer Dorrociak told defendant's roommate on the day of the occurrence that defendant was wanted in connection with the rape of Cheryl Poole and testimony that defendant was not arrested until 17 days after the rape, leads us to the belief that there was sufficient basis for an inference that defendant was avoiding arrest.

■ Defendant next contends that he was denied equal protection because he was indicted by a grand jury and thus deprived of a preliminary hearing to determine probable cause. We initially note that this issue was not raised, considered, or ruled upon by the trial court, and it appears that the basis for defendant's written motion to quash the indictment was "[t]hat the Illinois Constitution guarantees defendant a right to a prompt preliminary hearing to determine the question of probable cause." Since an issue not presented to or considered by the trial court cannot be raised on review (*City of Chicago v. Ross* (1977), 54 Ill. App. 3d 127, 369 N.E.2d 298; see *People v. Gale* (1979), 72 Ill. App. 3d 23, 390 N.E.2d 921, *cert. denied* (1980), ___ U.S. ___, 63 L. Ed. 2d 778, 100 S. Ct. 1341), it is waived.

In any event, this contention was rejected recently in *People v. Franklin* (1979), 80 Ill. App. 3d 128, 131, 398 N.E.2d 1071, 1073, where the court stated:

> "We do not agree with defendant that these alternative methods of instituting criminal proceedings [preliminary hearing and indictment] constitute an unreasonable classification in violation of the equal protection clause of the State or Federal constitutions. A State may, consistent with due process, dispense with the preliminary hearing procedure and authorize the prosecutor to

initiate the criminal proceedings directly. (*Lem Woon v. Oregon* (1913), 229 U.S. 586, 57 L. Ed. 1340, 33 S. Ct. 783; *People v. Redmond* (1977), 67 Ill. 2d 242, 367 N.E.2d 703, *cert. denied* (1978), 434 U.S. 1078, 55 L. Ed. 2d 785, 98 S. Ct. 1272.) Under the State constitution, a defendant is not entitled to a preliminary hearing as a right, but to a probable cause determination made either in a preliminary hearing or by a grand jury with reasonable promptness. (*People v. Arbogast* (1976), 41 Ill. App. 3d 187, 353 N.E.2d 434.) Both procedures serve the function of determining probable cause and to require a repetition of this function by initiating post-indictment preliminary hearings would be an empty formality serving no legitimate purpose. *People v. Moore* (1975), 28 Ill. App. 3d 1085, 329 N.E.2d 893."

We adopt this reasoning and reject defendant's due process contention.

We turn then to defendant's argument that certain hearsay testimony was improperly admitted. The record reflects that the court initially ruled Mrs. Stroud would be permitted to state that Cheryl told her she had been raped and robbed but that she could not testify to other statements of Cheryl's. Before Mrs. Stroud testified, however, the court heard argument and concluded that Cheryl's statement was a spontaneous declaration, and it permitted Mrs. Stroud to testify as to the content of Cheryl's statement with the reservation that it would "listen to what the witness [had] to say and then make [its] ruling." At trial, Mrs. Stroud was questioned as follows:

"Q. And what if anything occurred when you met Cheryl in that condition in your hallway?

A. Well, I asked her what happened. She told me what had happened.

Q. What did she tell you?

A. She had * * * been raped and beaten up.

Q. Did she say anything else?

A. Keep forgetting his name—and that she was—

Q. What did she say, Earl what?

A. She said the fellow's name was Earl."

It appears defendant made no objection to those questions nor did he at any time ask the court for the ruling it had reserved with respect to Mrs. Stroud's testimony.

■■■ When a court reserves its ruling on the admissibility of evidence, the objecting party must insist upon a subsequent ruling to preserve the issue on appeal. (*People v. Waller* (1977), 67 Ill. 2d 381, 367 N.E.2d 1283; *People v. El* (1980), 83 Ill. App. 3d 31, 403 N.E.2d 547.) Likewise, the failure to present proper and timely objection to the form of a question generally constitutes waiver of any error. (*People v. Adams* (1968), 41 Ill.

2d 98, 242 N.E.2d 167; *People v. Bonds* (1975), 26 Ill. App. 3d 703, 325 N.E.2d 388.) Thus, defendant has waived consideration of this issue, since he made no request for subsequent ruling on the reservation of the court nor did he object to the leading question asked. In any event, we believe the court correctly ruled that the statement was admissible as a spontaneous declaration, which is an exception to the hearsay rule. For a statement to qualify as such, three factors must be presented: "(1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." *People v. Robinson* (1978), 73 Ill. 2d 192, 199, 383 N.E.2d 164, 168, quoting *People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807.

Defendant does not dispute that the occurrence was sufficiently startling to produce a spontaneous and unreflecting statement or that Cheryl's statement was related to the circumstances of this event. He argues only that because there was time to fabricate, it was not a spontaneous declaration.

■ In this regard, our supreme court has said that the pertinent aspect of this element is whether there is "a lack of sufficient time to allow an opportunity for reflection and invention." (*Robinson*, 73 Ill. 2d 192, 199, 383 N.E.2d 164, 168; *Poland*, 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807.) In *In re Hatfield* (1979), 72 Ill. App. 3d 249, 257, 390 N.E.2d 453, 459, this court stated:

"We are aware that the time factor of the spontaneous declaration exception is an elusive element that will vary with the particular facts of each case.

'Perhaps an accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process. Testimony that the declarant still appeared "nervous" or "distraught" and that there was a reasonable basis for continuing emotional upset will often suffice.' (McCormick on Evidence §297, at 706 (Cleary 2d ed. 1972).)"

In the instant case, Cheryl stated that about three minutes after defendant left, she freed herself and her son (who had also been tied up) and they walked to Mrs. Stroud's apartment, which was a half block away; that when she arrived there about five minutes after she left her apartment, she was crying, her face was swollen, and her wrist was bleeding. It was Mrs. Stroud's testimony that when Cheryl arrived she was crying, her jaw was swollen, and her nose and wrists were bleeding. The record does not disclose how much time elapsed while Cheryl was freeing herself, but it

appears that the total passage of time between the occurrence and her subsequent conversation with Mrs. Stroud was in the area of 15 to 20 minutes. Cheryl had no phone in her apartment, and the record indicates that Mrs. Stroud was the first person to whom she could have spoken of the occurrence. Both stated that Cheryl had been injured and was crying when she came to Mrs. Stroud's apartment, and we believe that the totality of these circumstances form a reasonable basis for a conclusion by the trial court that Cheryl was in such a state of continuing emotional upset as to negate a reflective thought process. Thus, we find no error in the admission of the testimony of Mrs. Stroud.

Defendant also challenges a number of remarks made by the prosecutor during closing argument which he contends denied him a fair trial. The first of these concerned certain comments made in rebuttal argument by which defendant posits the prosecutor improperly sought to ally the jury to the prosecution and thereby diverted it from an independent evaluation of the evidence.

We note that it is not improper for the prosecutor in his argument to emphasize the evils of crime and to argue in favor of the effective administration of justice if such remarks are based on the evidence or legitimate inferences therefrom. (*People v. Galloway* (1979), 74 Ill. App. 3d 624, 393 N.E.2d 608; *People v. Agosto* (1979), 70 Ill. App. 3d 851, 388 N.E.2d 1018.) In the instant case, the prosecutor's reference to the jury as being part of law enforcement is not improper, as the jury's determination is a necessary condition for the effective enforcement of the law. The prosecution's statement that there would be no such thing as rape if the jury should acquit and that crime should not go unchecked are not improper, as they merely emphasize the fearless administration of justice. In any event, we have examined the remarks complained of, and we find no indication that the State improperly sought an alliance with the jury.

Second, defendant complains of comments by the prosecutor expressing his personal opinion. It is proper for a prosecutor, in his argument, to express his opinion on guilt where he states or it is apparent that such opinion is based on the evidence (*People v. Jackson* (1966), 35 Ill. 2d 162, 220 N.E.2d 229, *cert. denied* (1968), 393 U.S. 942, 21 L. Ed. 2d 279, 89 S. Ct. 309; *People v. Ramey* (1979), 70 Ill. App. 3d 327, 388 N.E.2d 196), and it is clear that an accused cannot complain of statements made in rebuttal by the prosecutor which were invited by remarks of the defense counsel (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858). Here, the prosecutor set forth the evidence in support of his position and then reached the conclusion that defendant "took the property." It is thus apparent that his assertion of guilt on the armed robbery charge was based on that evidence. Moreover, we think that the prosecutor's remarks

were invited by the defense attorney's comment in his closing argument that there was an absence of proof of armed robbery.

Third, defendant complains of remarks by the prosecutor in closing argument in which he told the jury that various aspects of Cheryl's testimony were "not unreasonable to me" and that "[p]ersonally I think that everything she said is corroborated." We note, however, that the prosecutor supported his conclusions with the testimony of Cheryl and corroborating evidence. In view thereof, his opinion comments were not improper. Moreover, we note that in his closing argument, defense counsel remarked on a number of occasions that in his view, various aspects of Cheryl's testimony were not believable. We think these remarks of defense counsel invited the above stated views of the prosecutor.

Fourth, defendant argues that the "final category of errors involved in the State's closing argument misled the jury to convict the defendant on the basis of the inflammatory nature of the crime, not on the basis of the evidence in this case." The prosecutor, in his closing argument, asked the jurors to place themselves in the position of Cheryl. Objections at that time were sustained, but subsequently the prosecutor again asked that the jurors place themselves in her position. No objection was made to these latter remarks, but defendant maintains they caused prejudice and are properly presented for review under the plain error doctrine.

■■ While it is clear that allegedly prejudicial remarks of counsel must be objected to at trial or the issue is waived (*People v. George* (1971), 49 Ill. 2d 372, 274 N.E.2d 26; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098), under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a)), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." In essence, allegedly prejudicial argument is waived in the absence of objection unless the purportedly improper remarks " 'were so prejudicial that defendant did not receive a fair trial or were so flagrant as to threaten deterioration of the judicial process.' " (*People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 22, 337 N.E.2d 454, 462, quoting *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324, 326.) In the instant case, we believe the statements in question were not so flagrant as to deprive defendant of a fair trial or to threaten the deterioration of the judicial process. Moreover, the fact that the jury found defendant not guilty of armed robbery tends to indicate that it closely evaluated the evidence rather than having been influenced by the remarks of the prosecutor. See *People v. Taylor* (1977), 53 Ill. App. 3d 810, 368 N.E.2d 950.

Concerning allegedly improper argument, our supreme court stated in *People v. Baptist* (1979), 76 Ill. 2d 19, 28-29, 389 N.E.2d 1200, 1205:

"[W]e are cognizant of the growing concern over improper prosecutorial arguments. [Citations.] Nevertheless, improper remarks generally do not constitute reversible error unless they result in substantial prejudice to the accused. [Citations.] 'Each case of this kind must be decided upon its own facts.' [Citations.]"

It is our view that guilt was clearly established in the instant case from the testimony of the victim, the corroboration thereof in the testimony of the police officers and Mrs. Stroud, and the physical evidence. Indeed, defendant does not even argue on appeal that his guilt was not established beyond a reasonable doubt and, in the light thereof, we conclude that the comments of the prosecutor complained of did not result in substantial prejudice to defendant.

For the reasons stated, the judgment is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.