THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LANNY ATCHLEY, Defendant-Appellant.

Third District    No. 80-435

Opinion filed June 10, 1981.

Douglas C. Scovil, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellant.

Robert H. Rennick, Sr., State's Attorney, of Toulon (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The defendant, Lanny Atchley, appeals from his conviction for delivery of more than ten grams but not more than thirty grams of a substance containing cannabis, in violation of section 5(c) of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 705(c)). He was sentenced to two years in the custody of the Illinois Department of Corrections.

The defendant's first contention on appeal is that he was not proved guilty beyond a reasonable doubt, because the evidence failed to establish that he had delivered a substance containing cannabis. The State called two occurrence witnesses. The first, 18-year-old Dennis Bogner, testified that he came to defendant's house trailer on the evening of February 16, 1980. Bogner testified that, upon entering the trailer, he saw defendant and Tom McNabb seated on a couch. McNabb was to the defendant's left. Bogner asked for a bag (of marijuana). Defendant said nothing, but smiled. McNabb then picked up from the floor a plastic bag containing marijuana. McNabb handed this bag to the defendant, who, in turn, handed it to Bogner. Bogner then handed the defendant $35 and left.

Tom McNabb testified for the State. His description of the events was the same as Bogner's up to the point of his handing the bag of marijuana to the defendant. McNabb testified that the defendant then rose and crossed the room to converse with Bogner. Their conversation lasted about a minute and Bogner then departed. When defendant returned to the couch he no longer had the bag of marijuana. Some time that evening, the defendant gave McNabb $35 "for the marijuana."

The defendant testified on his own behalf. He testified that Bogner entered his trailer and asked if anyone had a "bag." "I didn't say anything. I knew there was one, so I just smiled and looked over to Tom." McNabb picked up a bag from the floor to the left of McNabb's left foot and "handed it out." "Bogner was reaching for it and I just took up the slack and took it from Tom and I handed it to Dennis." Then, "Dennis handed

me the $35.00 and I handed it to Tom." He acknowledged that he knew the "bag" in question to contain cannabis.

The defendant contends that the transaction was between Bogner as buyer and McNabb as seller, and that the defendant was merely present. Therefore, argues the defendant, he was not proved guilty of "delivery" of cannabis. No accountability instruction was read to the jury.

The testimony of both Bogner and McNabb reveal that Bogner carried out the transaction with the defendant, although McNabb admits that the marijuana was his own and that he was the ultimate recipient of the money. In *People v. Aldridge* (1960), 19 Ill.2d 176, 179, 166 N.E.2d 563, *cert. denied* (1960), 364 U.S. 873, 5 L. Ed. 2d 95, 81 S. Ct. 117, our supreme court affirmed the conviction of the defendant for a heroin sale, even though there was

> " * * * no direct testimony that Aldridge ever owned or had possession of the heroin, or that he acted as principal in the transaction. Also, the record shows that at the time of his arrest Aldridge had not received any of the money which had been paid for the drug. However, the scope of the offense here involved is not restricted by the principles of law that relate to normal sales. Section 2—11 of the Uniform Narcotic Drug Act defines 'sale' to include 'barter, exchange, or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, broker, agent, servant, or employee.' (Ill. Rev. Stat. 1957, ch. 38, par. 192.28—2.11.) Under the broad reach of this definition it is not necessary to trace title to the drug with technical nicety in order to establish an unlawful sale. Nor does one who is proved to have participated in some capacity forbidden by the statute escape guilt because the proof does not fix with certainty the particular capacity in which he acted. Proof that a person participated in a transaction as principal, agent, servant, or employee is sufficient. Cf. *People v. Glass* 16 Ill.2d 595, 597; *People v. Shannon*, 15 Ill.2d 494, 496."

The Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 701 *et seq.*) defines "delivery" as follows:

> "(d) 'Deliver' or 'delivery' means the actual, constructive or attempted transfer of possession of cannabis, with or without consideration, whether or not there is an agency relationship." (Ill. Rev. Stat. 1979, ch. 56½, par. 703(d).)

We find this definition consonant with the reasoning of our supreme court in *People v. Aldridge*. Under this definition, the jury was justified in finding, on the basis of the evidence before it, that the defendant was proved guilty beyond a reasonable doubt of the delivery of cannabis.

The defendant next contends that the marijuana placed in evidence as

People's Exhibit No. 3 should have been excluded because the chain of custody was insufficiently established.

The State's evidence indicates that a bag containing a substance later identified as cannabis was taken from Dennis Bogner on February 17, 1980, when Bogner was arrested. The arresting officer, Stark County Deputy Sheriff Patrick Horrie, took custody of the bag. It remained in Horrie's continuous custody, locked in a tool box to which Horrie had the only key. The box was kept at Horrie's home. The cannabis was removed from the box for testing by the Illinois Crime Lab, for inspection by the State's Attorney, and for court appearances, but was accounted for at all times.

The defendant asserts that "the substance was seized on February 17, 1980, but was not taken to the Illinois Crime Lab at Morton for testing until April 15, 1980. There is no testimony that up to that time the plastic bag in which the plant material was contained at the time it was seized had been in any way marked or identified." Also, Pat Horrie continued to hold this evidence at his residence for one month after he resigned as deputy sheriff. "There is no evidence that he was asked by anyone about this evidence at the time he resigned or prior thereto as to where he kept it, and there is no evidence of any conversation that he had with anyone as to the safekeeping of this substance after he resigned." This, argues the defendant, constitutes such "careless and irresponsible" handling of the substance that the State was unable to establish a proper foundation for its admission into evidence. *People v. Woessner* (1971), 132 Ill. App. 2d 58, 268 N.E.2d 508.

We disagree. The lack of identifying marks or labels on the evidence while it was in the custody of Dennis Bogner and of Deputy Horrie, prior to its first delivery to the Illinois Crime Lab, does not preclude the introduction of the marijuana into evidence. "Continuity of possession is as effective to guarantee identity as are identifying marks or labels. Indeed, since identifying marks may be fabricated at a later date, continuity of possession, which requires proof of delivery, presence and safekeeping, is more readily subject to verification." *People v. Judkins* (1957), 10 Ill. 2d 445, 448, 140 N.E.2d 663.

In this case, the bag holding the marijuana was sealed with tape by the seizing officer and was placed in a locked box to which only he had the key. Thus, the possibility of tampering or substitution by anyone, except Deputy Horrie himself, was effectively eliminated. (Compare *People v. Brown* (1972), 3 Ill. App. 3d 879, 279 N.E.2d 382.) There remains the possibility that the seizing officer himself added to or tampered with the evidence. Such a possibility always exists. Where, as here, the seizing officer is the sole custodian of the evidence, that possibility is increased. That such possession was continuous, without

tampering or substitution, is not "readily subject to verification." It may be that the more regular practice, that of marking and inventorying the evidence, and placing it in a secure locker at the police station, provides greater protection against perjured testimony, because, in such a circumstance, custodial officers, other than the seizing officer, are available to testify. However, a more complicated chain of custody provides no guarantee against perjury and may actually provide less security against tampering.

The defendant makes no assertion that the evidence was tampered with or substituted. Nor does he suggest that the testimony of the seizing officer, and custodian of the evidence, was perjured. Dennis Bogner testified that, from his experience of smoking it, he believed the bag to contain marijuana. Tom McNabb testified that the bag he transferred to Bogner at the defendant's home contained marijuana. The defendant himself testified that he "knew" the item which Bogner requested and which Tom McNabb produced was cannabis. In the absence of any attack on Deputy Horrie's credibility, we cannot say that his exclusive possession of the substance negated the State's evidence of a continuous chain of custody over the cannabis.

The fact that Mr. Horrie continued to exercise control over the physical evidence subsequent to his resignation from the Stark County sheriff's office does not break the chain of custody. His testimony establishes that, subsequent to his resignation, the evidence was kept securely locked, except for the times he delivered it to authorized personnel for inspection, and that at such times the evidence was within his sight and was not tampered with. Furthermore, the most critical period in the chain of custody was prior to the testing of the substance by the State's chemist. (*People v. Vance* (1979), 74 Ill. App. 3d 446, 448, 393 N.E.2d 91.) Mr. Horrie who had sole possession of the evidence from the time it was taken from Bogner until it was delivered to the State Crime Lab, was a deputy sheriff during that period. In the absence of an attack upon the credibility of the arresting officer, the State's evidence was sufficient to establish a chain of custody such that the possibility of tampering or substitution was negated. *People v. Anthony* (1963), 28 Ill.2d 65, 68, 190 N.E.2d 837.

■■ The defendant next contends that prejudicial error was committed when evidence of another crime, *i.e.*, possession of marijuana by Dennis Bogner, was introduced, over objection, at defendant's trial. The defendant cites us to *People v. Romero* (1977), 66 Ill.2d 325, 330, 362 N.E.2d 288, which sets out the rationale for the exclusion of other-crimes evidence:

> "The general rule is that evidence of offenses other than those for which a defendant is being tried is inadmissible. [Citation.] The underlying rationale is that such evidence 'is objectionable "not

because it has no appreciable probative value, but because it has too much." (1 Wigmore, Evidence, 3d ed., sec. 194.) The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime.' "

Obviously, where the "other crime" has been committed, not by the defendant, but by another individual, such evidence does not suggest to the jury that the defendant is a "bad person," likely to commit crime. Occasionally, the crime of another may reflect adversely on the defendant, as, *e.g.* when evidence of other crimes by a co-defendant or co-participant is introduced. (See *People v. McMillan* (1970), 130 Ill. App. 2d 633, 264 N.E.2d 554.) Such, however, is not the case here. Rather, the testimony in the instant cause would tend to discredit Bogner as a witness. Indeed, the defendant tried to elicit from Bogner whether he had made a deal with the State's Attorney in exchange for his testimony, and the State, on redirect, elicited testimony from Bogner that the State's Attorney had promised a recommendation of court supervision, with no arrest record, in exchange for Bogner's testimony. The evidence of Bogner's arrest by Deputy Horrie was essential for establishing the chain of custody over the marijuana. Where "[t]he suggestion that a person other than the defendant committed a separate criminal offense was a by-product of the relevant evidence offered by the State," the admission of such evidence does not constitute error. *People v. Arbogast* (1976), 41 Ill. App. 3d 187, 191, 353 N.E.2d 434.

Additionally, the defendant objects to the introduction into evidence of a pipe and a cigarette rolling machine seized from Bogner upon the latter's arrest. We agree that this evidence was in no way·linked to the defendant. Its introduction was erroneous. However, under the facts of this cause, its prejudicial effect was minimal. We find the error harmless beyond a reasonable doubt.

The defendant next contends that the State failed to prove the weight of the cannabis in People's Exhibit No. 3. Susan Johns, a forensic scientist for the Illinois Department of Law Enforcement, testified that she tested the material in People's Exhibit No. 3. Based upon microscopic examination and chemical examination, it was her opinion that the substance given her by Deputy Horrie contained cannabis. She testified on cross-examination that there are various parts to a cannabis plant. However, the majority of the material she examined was of a leafy nature. She did not recall whether there was any stem substance or seed substance. On redirect, she was asked, "To the best of your knowledge, did you observe any mature stocks [stalks] in the sample?" This was objected to as "asked and answered," but the objection was overruled. The court's ruling on the objection was proper. She answered, "Not that I can recall."

■■ Section 3 of the Cannabis Control Act defines cannabis as "including any parts of the plant Cannabis Sativa" and "the seeds thereof." However,

specifically excluded from the definition of cannabis are "mature stalks of such plant" and derivatives of such mature stalks. Also excluded are the "sterilized seed of such plant which is incapable of germination" and certain products derived from the plant seed. (Ill. Rev. Stat. 1979, ch. 56½, par. 704(a).) It is to be noted that both mature stalks and sterilized seeds have legitimate economic uses. For example, the mature stalks are a source of the fiber hemp.

The defendant submitted a proposed instruction which accurately stated the exceptions to the definition of cannabis set forth in section 3 of the Cannabis Control Act. The instruction was denied. In this, the court did not err. Under section 16 of the Cannabis Control Act, the defendant bears the "burden of proof of any exemption or exception" to the Act. (Ill. Rev. Stat. 1979, ch. 56½, par. 716.) "The cases show that a provision placing the burden of proving a statutory exemption on a defendant is equivalent to making the exemption an affirmative defense. The State is not initially required to negate the applicability of the exemption in the pleadings or proof, but once the applicability of the exemption is made a reasonable possibility by evidence, or otherwise at the trial, either by the State or the defendant, the State must meet its usual burden of proof as to the issue together with other elements of the crime." (*People v. Biers* (1976), 41 Ill. App. 3d 576, 582, 353 N.E.2d 389.) In the case before us, the defendant has failed to produce any evidence raising a reasonable possibility that any of the substance traced to him was excepted from the definition of cannabis under section 3 of the Act. Nor did the State's evidence establish such a possibility. Ms. Johns testified that the substance which she received from Deputy Horrie might have contained stems and seeds, but that a "majority" of the substance was leafy. Stems and seeds, other than mature stalks and sterilized seeds, are defined as cannabis under section 3. There is no evidence that the seeds were sterilized. Ms. Johns specifically stated that she did not recall having seen any mature stalk material in the sample. As there was no evidence indicating the presence of exempted cannabis in People's Exhibit No. 3, the court did not err in denying the defendant's instruction defining such parts of the plant Cannabis Sativa as are exempted from prohibition by the Cannabis Control Act.

■■ Even assuming, arguendo, that some of the material in People's Exhibit No. 3 was exempt cannabis, the State has still borne its burden of proving that "more than 10 grams * * * of any substance containing cannabis" was delivered by the defendant. The weight of the substance containing cannabis was an element of this offense, as the offense charged, delivery of "more than 10 grams but not more than 30 grams of any substance containing cannabis" is a Class 4 felony (Ill. Rev. Stat. 1979, ch. 56½, par. 705(c)), whereas the offense of delivery of "more than 2.5

grams but not more than 10 grams of any substance containing cannabis" is a Class A misdemeanor (Ill. Rev. Stat. 1979, ch. 56½, par. 705(b)). (*People v. Calhoun* (1977), 46 Ill. App. 3d 691, 696, 361 N.E.2d 55.) The statute provides for a graduated penalty, based not upon the weight of the cannabis delivered, but upon the weight of "any substance containing cannabis" that is delivered by the defendant. Our supreme court upheld the constitutionality of such a classificatory scheme in *People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97, recognizing that cannabis is marketed in an impure state. Accordingly, this court has held that impurities such as paper and soil which are mixed together with the cannabis may be included for purposes of determining the weight of the "substance containing cannabis." (*People v. Calhoun* (1977), 46 Ill. App. 3d, 691, 696-97, 361 N.E.2d 55.) The weight of People's Exhibit No. 3 was established by competent evidence, as was its characterization as a substance containing cannabis. These elements of the State's case were proved beyond a reasonable doubt.

■■ ■ Finally, the defendant contends that the trial court abused its discretion in imposing a sentence of two years imprisonment. He argues that, as one who had never previously been convicted for a drug-related offense, he should have been sentenced according to section 10 of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 710), which provides:

> "Whenever any person who has not previously been convicted of, or placed on probation or court supervision for, any offense under this Act or any law of the United States or of any State relating to cannabis, or controlled substances as defined in the Illinois Controlled Substances Act, pleads guilty to or is found guilty of violating Sections 4(a), 4(b), 4(c), 5(a), 5(b), 5(c) or 8 of this Act, the court may, without entering a judgment and with the consent of such person, sentence him to probation."

Such a sentence is not mandatory for first offenders, but is a permissible alternative to the entrance of judgment and sentence under the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*) Sentencing for first-conviction cannabis offenders, as for all other violators of the criminal law, is left to the sound discretion of the trial court and will not be reversed or modified by this court unless such discretion is abused.

The defendant's previous criminal history includes a 1975 conviction for aggravated battery (battery upon a police officer), for which he was fined $200. In 1969, 11 years prior to the instant conviction, the defendant was convicted of misdemeanor theft and received a term of probation. Between 1971 and 1980, he was convicted of nine traffic offenses. In addition, three witnesses appeared at the sentencing hearing, who testified

that the 31-year-old defendant sold marijuana to them on numerous occasions. These witnesses were 18-year-old Dennis Bogner and two 20-year-olds. Such testimony is admissible where, as here, it was "presented formally with due opportunity for confrontation and cross-examination." *People v. Wagner* (1979), 76 Ill. App. 3d 965, 968, 395 N.E.2d 414; *People v. Kirk* (1978), 62 Ill. App. 3d 49, 378 N.E.2d 795.

The court denied probation, finding that "[d]efendant's imprisonment is necessary for the protection of the public" and "[p]robation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a).) The court also found the following factors in aggravation:

> "The defendant has a history of prior delinquency or criminal activity."
>
> "The sentence is necessary to deter others from committing the same crime." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a).)

No factors in mitigation were found (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.1). The record fully supports the court's findings. The testimony at the pretrial hearing supports the conclusion that this marijuana sale was not an isolated instance, but part of a series of transactions between the defendant and several of the younger adults of his community. Such evidence, indicating that the defendant was known to certain youthful residents of his small community as a supplier of marijuana, supports the court's conclusion that the imposition of a relatively severe sentence might serve as a deterrent to others. The sentence imposed was less than the maximum allowed. (See Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(7).) As the trial court did not abuse its discretion in sentencing the defendant, we shall not disturb its judgment by substituting our own.

For the reasons herein stated, the judgment of the Circuit Court of Stark County is affirmed.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.