TYSON, Judge.
Hobert Ellis was indicted by the June, 1981, Etowah County Grand Jury for trafficking in cannabis contrary to Section 20-2-80(l)(a) Code of Alabama 1975. Trial was had with the jury finding him “guilty as charged.” A sentencing hearing was held after which appellant was sentenced to twelve years’ imprisonment and assessed a $25,000 fine. From that conviction he now appeals.
Around 12:80 p.m. on May 16, 1981, appellant and his wife were seen on Littleton Road, a much traveled country road between Highways 481 and 278 in Etowah County. Appellant stopped his truck in the middle of the road and left the motor running as he exited and approached a car stopped in the middle of the opposite lane. The vehicles were not side by side. Rather, appellant had stopped his truck so that the bed of it was nearly even with the trunk of Robinson’s car. Shortly thereafter, Chief Deputy Charles Tinsley and Captain Kirby Johnston of the Etowah County Sheriff’s Department drove to the scene. They were on routine patrol when they observed the vehicles and appellant. Johnston saw appellant and another man, Aubrey Robinson, standing near the rear of the car. Appellant was carrying in his hand a large box, which had once held a lawn mower, toward the rear of the car. When appellant saw the patrol car, he threw the box down behind Robinson’s car, said something to his wife, who, by that time had moved to the driver’s seat of the truck, and began to walk toward his truck. Appellant’s wife began to move the truck toward appellant, but was stopped by the officers. While Johnston requested identification from appellant and Robinson, Tinsley opened the box and found five one-pound bags of marihuana concealed in an opague feed sack. Appellant, his wife, and Robinson were immediately arrested.
I
Appellant contends that the trial court erred in denying his motion to suppress the introduction of the marihuana into evidence arguing that it was the product of an illegal search and seizure.
Captain Johnston testified that while they were approaching the parked vehicles, he saw appellant, whom he knew, carrying a large box in his hand. At trial, Johnston testified that he had known appellant “by reputation and by sight” for about four years. (R. 52). Johnston stated that once *144 appellant saw the patrol car, he threw the box on the ground behind Robinson’s car and began to walk toward his truck. He stated that Tinsley initially inspected the box and he viewed it a couple of minutes after Tinsley had.
Chief Deputy Charles Tinsley testified that he and Johnston had stopped at the scene because both appellant’s and Robinson’s vehicles were parked in the road preventing any other vehicle from passing, and that such constituted a traffic violation. See Ala.Code Section 32-5A-8, -138 (1975). Tinsley stated that as they were stopping, appellant’s wife began to move the truck. Johnston, who was driving the patrol car, sounded his siren and flashed the blue light. The truck immediately stopped. Tinsley stated that the trunk of Robinson’s car was open and he saw appellant, whom he knew, turn and make a swinging motion, although he could not see what he had done. Tinsley then saw appellant walk toward his truck.
Tinsley testified that he retrieved the box discarded by appellant and inspected its contents. It was located about one foot behind Robinson’s car, with part of it resting on the road and the other part resting on the shoulder of the road. He stated that the end flaps of the box were pushed inside the box and a heavy paper sack, similar to that in which cattle feed is packaged, was sitting in the box. Tinsley opened the sack and observed the marihuana.
When Tinsley located the box, appellant was standing about six feet away from it. Neither appellant, his wife nor Robinson voluntarily made any claim to it. Tinsley testified that as he and Johnston drove to the scene he knew that there was something suspicious going on.
In addition, appellant and Robinson were searched at the scene. Found on Robinson was $1700.00. Nothing incriminating was found on appellant. Furthermore, it was shown that on May 11, appellant’s wife had purchased a lawn mower from the Rainbow City Woolco department store. A store employee identified the box in which the marihuana was found as coming from his store and a receipt reflecting the above purchase. The box had contained a lawn mower of the same type that appellant’s wife had recently purchased.
At trial, both appellant and his wife denied ownership and possession of the box.
Mrs. Ellis testified that on May 16, neither she nor appellant had a box with them. She stated that she had never seen the box found by Tinsley until he retrieved it. She did not see it in anyone’s possession. Mrs. Ellis stated that she did not see appellant pick up the box.
Appellant testified that he did not have a box with him on May 15, and did not take the box found by Tinsley to the scene. He stated that he did not have the box in his hand when the officers approached the scene in their patrol car. Furthermore, he denied having anything in his hand. Appellant stated that he did not know that there was a box containing marihuana on the side of the road where he had stopped.
A close reading of the evidence reveals that the officers were on routine patrol when they observed appellant’s truck and Robinson’s car obstructing Littleton Road. The obstruction constituted a violation of the rules of the road and, thus, the officers properly stopped to investigate. While in the process of stopping, they observed appellant throw down a large box which he had been carrying. Appellant then began to move from the rear of Robinson’s car toward his truck, which his wife had begun to move toward him. The officers then sounded the siren and flashed the blue light to stop the truck.
At the scene, the officers recognized the appellant and knew of his bad reputation. Based upon their observations and appellant’s reputation, the officers suspected that appellant was involved in some criminal activity. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Young v. State, 372 So.2d 409 (Ala. Cr.App.1979).
The evidence clearly established probable cause to search the box discarded by appellant. The observed traffic violation imposed upon the officers the duty to stop and *145 investigate. See e.g. Braxton v. State, 350 So.2d 753 (Ala.Cr.App.1977); Dickerson v. State, 43 Ala.App. 694, 200 So.2d 487, cert. denied, 281 Ala. 718, 200 So.2d 492, cert. denied, 389 U.S. 994, 88 S.Ct. 496, 19 L.Ed.2d 289 (1967).
Furthermore, while reputation of an accused, standing alone, is an insufficient basis for a finding of probable cause, it may be considered with other facts and circumstances in determining probable cause. Murray v. State, 396 So.2d 125 (Ala.Cr.App.1980), cert. denied, 396 So.2d 132 (Ala.1981). So may an officer’s suspicion be considered as a factor in determining whether probable cause existed. Nicaud v. State ex rel. Hendrix, 401 So.2d 43 (Ala.1981).
The furtive movements of appellant in discarding the box as well as his walking toward his truck thereafter are also legitimate circumstances to consider in determining whether probable cause existed. See Shipman v. State, 291 Ala. 484, 282 So.2d 700 (1973); See generally United States v. Mendenhall, supra.
Moreover, the inherent mobility of appellant’s truck and Robinson’s car is another fact supporting the conclusion that the officers, at time of the search of the box and feed sack, had facts and circumstances within their knowledge which would warrant a person of reasonable caution in believing that an offense had been or was being committed. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Jones v. State, 407 So.2d 870 (Ala. Cr.App.1981).
Consequently, based on the totality of the circumstances, we find that the officers had sufficient articulable facts before them to constitute probable cause. They legitimately searched the box and feed sack and legally discovered and seized cannabis. Thus, no error was committed in the trial court’s denial of appellant’s motion to suppress. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Vogel v. State, 426 So.2d 882 (Ala.1982).
II
Lastly, appellant contends that the State failed to prove the requisite quantity of cannabis. Thus, he argues that the trial court erred in overruling his motion to exclude the State’s evidence and his motion for a new trial.
John Case, a criminalist with the State Department of Forensic Sciences, testified to his examination of the marihuana found by Tinsley. He examined the five bags submitted to him and determined that each contained marihuana. Case stated that “in these five plastic bags there was crushed plant material. There was no identifiable intact stalk of marijuana plant. Consisted of flowering tops, seeds and other crushed plant material, leaves.” (R. 106). Case stated that the total weight of the five bags was five pounds. He did not weigh the plastic bags.
As to the composition of the marihuana, Case testified on cross examination as follows:
“Q There are stalks and stems and evidence of them in these bags, aren’t they John?
“A Well, there could be. After the material is in a crushed condition it’s impossible to—
“Q As a matter of fact, there’s some right up there on the top of what’s been marked as State’s Exhibit 9, isn’t there?
“A There is some woody material which could be considered a stem, I would say. Yes, sir.
“Q Some right there on the top of what has been marked as State’s Exhibit 8, isn’t there?
“A I would consider that a portion of a stem, yes, sir.
“Q Several right in here in what’s been marked as State’s Exhibit 7?
“A Yes, sir.
“Q All through the side here of State’s Exhibit 6 and on that side too, and in here?
“A Yes, sir.
“Q Put these back in there so we don’t get them confused. On State’s Exhibit 5, *146 stalks in this area here, here, some more in this area and, as a matter of fact, they’re punching out in the bag, aren’t they?
“A I would consider them as stems rather than stalks.
“Q Okay. Now, John, in each one of those bags too, there is also seeds, aren’t there?
“A There were seeds present, yes sir.
“Q Did you make a determination as to whether or not those seeds are sterilized or are germinating seeds?
“A No, sir.
“Q So, if those are sterilized seeds in there, when you weigh the material the weights that are included here that you have given includes the weight of those seeds?
“A Yes, sir.
“Q And the stems and what may be stems or stalks, they’re also included in the weight that you have given here?
“A Yes, sir.
“Q Did you check to make any determination as to whether or not there are any fibers that are contained in there that were produced or came from any production of the stalks or stems? Whether or not there are any fibers in there from the stalks or stems.
“A Well, of course, the entire stem and stalk is constructed of fiber, so there would be fibers present.
“Q There would be fibers in there also. Did you include that in the weighing as reflected in the figures that Mr. Moore has put on the board?
“A Yes, sir.
“Q Did you make a determination when you examined these as to whether or not there was any oil or cake from the stems or stalks that were contained in there or from the seed in there?
“A I did not note any oil material or any prepared cake material, no, sir.
“Q Did you look all the way through it, though, to find out whether or not there was any in there?
“A Yes, sir.
“Q And you didn’t find any evidence of that?
“A No, sir.
“Q Did you run any tests to find out if there was any other compounds or mixture or salt or any other type matter contained in these bags?
“A Only a visual examination.
“Q But no chemical analysis?
“A No, sir.
“Q So, if there was or if there could have been something determined by the results of chemical tests and it is present in that bag also, that’s also reflected in the weights that you have given here?
“A Yes, sir.
“Q Excluding these items that I have just discussed with you, they’re weight, from the total weights that you derived at the time you weighed them do you know what the remaining weight of the material is that would be left?
“A I would say that it would be impossible to determine what portions of the fiberous material could have originated from a stalk and which portion could have originated from a stem, therefore making that determination impossible.
“Q So, it would have been definitely less than five pounds?
“A There would be some weight included that would be seeds and some weight that could possibly be have been from a portion of a stalk.
“Q You said it was impossible. Now, John, it’s not actually impossible. It would just be difficult to sit down and go through, wouldn’t it? It would be very time consuming?
“A The impossibility would be the problem of determining what is a stem and what is a stalk?
“Q Okay. Haven’t found a way scientifically to make a determination on that yet?
“A Not unless you see the plant as it is growing.
“Q So, what you have indicated here that could be stems or what appears to be stems, in actuality could be mature stalks, couldn’t they?
*147 “A Well, I have never had a definition handed from the Court as to what is a stalk as opposed to a stem.
“Q So, you can’t say what they are, then?
“A No sir.
“Q They could be stalks or stems either one?
“A Yes, sir.”
(R. 109-111) (Emphasis added).
On re-direct examination, Case stated that ninety percent of the marihuana was smokable, and that quantity of the total amount of marihuana would weigh over 2.2 pounds.
Appellant offered no evidence to rebut the testimony of Case.
Initially, we note that the testimony of Case clearly distinguished between a stem and a stalk. His testimony unequivocally established that the cannabis did not contain any mature stalks. Consequently, Case’s use of the term “stem” was synonymous with the term branch.
In Dickerson v. State, 414 So.2d 998, 1002 (Ala.Cr.App.1982), we stated:
“It is well established that the burden is upon the appellant to establish and bring himself within any exclusion which is found not in the enacting clause defining a crime but rather in a subsequent clause or statute. Specifically, he must establish that the marihuana seized from his residence contained excludable matter falling within the definition of such under § 20-2-2(15).” (Citations omitted). “Thus, the question becomes whether appellant sufficiently established that portions of the cannabis seized were within the exclusions of § 20-2-2(15).” (Citations omitted).
See e.g., Weaver v. State, 418 So.2d 202 (Ala.Cr.App.1982); Watkins v. State, 50 Ala.App. 111, 277 So.2d 385, cert. denied, 291 Ala. 801, 277 So.2d 389 (1973); State v. Tinsley, 181 Conn. 388, 435 A.2d 1002 (1980); State v. Buchman, 361 So.2d 692 (Fla.1978); State v. Morris, 227 N.W.2d 150 (Iowa 1975); Accord United States v. Baker, 641 F.2d 1311 (9th Cir.1981); United States v. Henry, 615 F.2d 1223 (9th Cir. 1980); See also Slaughter v. State, 411 So.2d 819 (Ala.Cr.App.1981); People v. White, 27 Mich.App. 432, 183 N.W.2d 606 (1970); State v. Mudge, 69 Wash.2d 861, 420 P.2d 863 (1966) (where, in a possession of marihuana case, the burden of establishing that the marihuana contained excepted materials was on the defendant); See generally Warren v. State, 52 Ala.App. 35, 288 So.2d 817, rev’d on other grounds, 292 Ala. 71, 288 So.2d 826 (1973); Knox v. State, 50 Ala.App. 494, 280 So.2d 200 (1973).
It is incumbent upon the one who relies on an exception, exemption, or exclusion in a statute to set it up and establish it. See e.g., United States v. Chodor, 479 F.2d 661 (1st Cir.1973); Sesson v. State, 563 S.W.2d 799 (Tenn.Cr.App.1978); See also 29 Am.Jur.2d Evidence § 154 (1967); 22A C.J.S. Criminal Law §§ 572-73 (1961); 28 C.J.S. Drugs and Narcotics § 190 (Supp. 1974); 31A C.J.S. Evidence § 104 (1964). In statutes which contain exceptions which take out of the scope of the statute conduct that would otherwise fall within its terms, the defendant must come forward with at least enough evidence to create a real issue as to whether vel non he is entitled to the benefit of the exception he invokes. United States v. Attorney General of the State of New York., 475 F.Supp. 707 (E.D.N.Y.1979). Such a shifting of the burden of going forward is not a deprivation of due process. United States v. Rosenberg, 515 F.2d 190 (9th Cir.1975); State v. Lynch, 197 N.W.2d 186 (Iowa 1972); Agee v. State, 8 Md.App. 148, 258 A.2d 779 (1969); State v. Frost, 57 Ohio St.2d 121, 387 N.E.2d 235 (1979).
Placing the burden on appellant to establish that portions of the cannabis contained material falling within the exclusions of Section 20-2-2(15) Code of Alabama 1975 do not run afoul of the principles stated in Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); Mullaney v. Wilber, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
*148 In the instant case, the burden of proof does not change simply because the defendant has the burden of producing evidence establishing the existence of excluded material in the cannabis. Dickerson, supra.
A complete review of the evidence reveals that appellant did not establish that the cannabis contained any of the excluded matter defined in Section 20-2-2(15)[1]. Consequently, he did not meet his burden of going forward.
Moreover, the evidence does not establish a reasonable probability that the cannabis contained excluded matter as appellant argues in brief. People v. Atchley, 97 Ill.App.3d 85, 52 Ill.Dec. 585, 422 N.E.2d 266 (1981); People v. Biers, 41 Ill.App.3d 576, 353 N.E.2d 389 (1976).
Based upon the foregoing, we find no error in the trial court’s rulings on appellant’s motion to exclude or motion for a new trial.
We have examined appellant’s contentions on appeal, A.R.A.P. 45B, and find no error. Thus, this cause is hereby affirmed.
AFFIRMED.
DeCARLO, BOWEN and BARRON, JJ., concur in Issue II and in the affirmance of the cause.
As to Issue I as presented in the foregoing opinion, the views of Judges DeCARLO, BOWEN and BARRON are set forth in the extended opinion of the court hereto attached.
HARRIS, P.J., not sitting.

Extended Opinion

BARRON, Judge.
I approach Issue I from a different perspective than the foregoing opinion.
This is a companion case to Aubrey Lee Robinson v. State, 428 So.2d 148 (Ala.Cr.App.1982), released this date. The search and seizure issue in both cases arose out of the same facts.
The law is well settled that persons charged with a crime may claim the benefits of the exclusionary rule only upon proper showing that (1) they had a legitimate expectation of privacy in the area searched, and (2) the search was illegal.
As I view it, the issue of “standing” is the threshold which one must cross before arriving at the question of the legality or illegality of the search.
For the reasons pointed out in Robinson, supra, the appellant in this case, in my view, lacked standing to assert Fourth Amendment violations. Such lack of standing pretermits the issue of the legality of the search.
Due to lack of standing, the trial court properly denied appellant’s motion to suppress. This is the same result obtained in the foregoing opinion.
DeCARLO and BOWEN, JJ., concur in the Extended Opinion.

. The legislature recently amended Section 20-2-80(1) to include a definition of marihuana which would make criminal possession of those portions now excluded. 1982 Ala.Acts No. 839 (August 22, 1982).